Argued and submitted March 24, reversed and remanded June 18, reconsideration denied August 8, petition for review denied October 7, 1986 (302 Or 86)

GENERAL ELECTRIC CREDIT CORPORATION,
*Appellant,*

*v.*

UNITED PACIFIC INSURANCE COMPANY,
*Respondent.*

(A8307-04836; CA A35978)

722 P2d 15

Thomas A. Gerber, Portland, argued the cause and filed the briefs for appellant.

Marvin S. Nepom, Portland, argued the cause and filed the brief for respondent.

Before Buttler, Presiding Judge, and Warren and Rossman, Judges.

ROSSMAN, J.

**ROSSMAN, J.**

This is an appeal from a judgment dismissing plaintiff's complaint with prejudice. Plaintiff alleged two causes of action to recover on a motor vehicle dealer surety bond, one to recover $15,000 for losses sustained in 1981 and a second to recover $14,898 for 1982. Defendant successfully asserted that there was but one continuing bond and that defendant's liability was fully discharged by payment of the bond limit, $15,000, to another prior lien claimant. On appeal, plaintiff challenges the court's determination that the bond was continuing rather than a separate bond of $15,000 for each year.

Stapp's Mobile Homes, Inc. (dealer) operated a mobile home dealership from 1980 through 1982. For each year of operation, it was required to be licensed by the Motor Vehicles Division and was subject to requirements of bonding and licensing.[1] Defendant provided dealer's statutory bond for each year of licensing. Throughout 1980, 1981 and 1982, plaintiff provided financing for the dealer's inventory of mobile homes, holding a purchase money security interest in

---

[1] Between 1980 and 1982, ORS 481.305 provided that:

"(1) * * * [N]o dealer shall buy, sell, trade, take on consignment, or in any other manner deal in new or used motor vehicles, trailers or semitrailers unless he has a license from the division authorizing him to do so. Such license shall be furnished annually by the division, and shall run from January 1 of each year.

"(2) * * * [A]ny dealer desiring to buy, sell, trade, take on consignment, or in any other manner deal in new or used motor vehicles, trailers and semitrailers shall apply for a license therefor upon a form to be prescribed and furnished by the division. * * *"

"(3) With such application, the applicant shall:

"(a) Pay to the division a license fee of $5.

"(b) Deliver to the division a bond complying with ORS 481.310."

ORS 481.310(1) provided:

"The bond mentioned in ORS 481.305(3)(b) shall have a corporate surety licensed to do business within this state. The bond shall be executed to the State of Oregon in the sum of $15,000 * * *. It shall be approved as to form by the Attorney General, and be conditioned that the applicant, if a license is issued to the applicant, shall conduct business as a dealer without fraud or fraudulent representation and without violating any of the provisions of this chapter."

ORS 481.315(1) provided that the licenses would "expire on December 31 of the year for which the license is issued."

ORS 481.305, 481.310 and 481.315 were amended by Or Laws 1983, ch 408, §§ 2, 3 and 5, in ways not pertinent here. All citations to statutes in this opinion will refer to the version in effect from 1980 through 1982 and before amendment.

the inventory. During an unscheduled, unannounced inspection of dealer's lots in 1981, plaintiff discovered that five mobile homes financed by it had been sold by the dealership, without notice or payment to plaintiff and without transfers of titles and registrations to the purchasers. Plaintiff lost $53,702.05 on account of the dealer's conduct in 1981. In 1982, the dealer again sold mobile homes in the same way, resulting in a loss to plaintiff of $14,898.

Plaintiff brought this action on the surety bonds. Defendant asserted successfully that the bonds for 1980 through 1982 were actually one continuous bond, rather than a separate liability for each year. Because defendant had already paid the limit of the bond to a prior claimant, in good faith and before plaintiff's claims were asserted, the trial court held that the surety's liability was fully discharged and exonerated and entered judgment dismissing plaintiff's complaint with prejudice.

Plaintiff argues that, in the light of the licensing statute requirement that a licensee obtain a bond for each year of licensing, the bond involves a separate liability for each year and payment of the bond limit for one year does not discharge the surety's liability for the full amount of the bond in another year. Defendant responds that *New Amsterdam Co. v. Hyde,* 148 Or 229, 34 P2d 930, 35 P2d 980 (1934), is controlling, and that it requires that we hold that it was one continuing obligation and that it was discharged by payment in good faith to the previous claimant.

In *New Amsterdam,* the statute required that a person seeking to obtain a permit as a securities broker provide a bond.[2] The statute provided that, with an initial application

---

[2] Oregon Code 1930, § 25-1309 provided, in relevant part:

"No broker shall, in the state of Oregon, sell or offer for sale any security, or by advertisement or otherwise profess to engage in the business of selling or offering for sale any securities unless and until such broker shall have secured from the corporation commissioner of the state of Oregon a permit to do business as a broker, and at the time of applying to the corporation commissioner for such permit said broker shall pay a filing fee of $50, and shall file with the corporation commissioner evidence establishing the sound moral character and good business repute of the applicant and showing for what length of time and where such applicant has been engaged in the sale of securities, together with a full statement under oath of the assets and liabilities of such applicant and such other information as the corporation commissioner may require, and shall file a corporate surety bond, executed by a surety company satisfactory to the corpora-

for a permit, the applicant was required to pay a fee of $50, file evidence of sound moral character and business repute, show the length of time and where the applicant had been engaged in the sale of securities and file a statement of assets and liabilities. The applicant was also required to file a corporate surety bond in the sum of $5,000. A broker's permit expired on June 30 of each year and could be renewed on written application. A renewal application required a filing fee of $50. The statute specifically stated that the renewal application could be made without filing further statements or furnishing further information, unless specifically required by the Corporation Commissioner. The bond by its terms did not provide for a specific expiration date, but allowed for termination by the surety on 30 days written notice to the principal and the Corporation Commissioner. The bond did not indicate a need or process for renewal. The court determined that the surety bond was a continuing, single obligation covering all of the years for which a permit had been issued. The court found it significant that neither the surety nor the principal could withdraw the bond; the surety could terminate liability only by giving notice as provided by the bond. It was also significant that the parties had treated it as a continuing bond.

Here, both the statute and the bond terms differ from those in *New Amsterdam.* The governing statute requires a bond of each applicant for a mobile home dealer license. ORS 481.305(1). Before the 1983 amendments, and through the years at issue here, a dealer of motor vehicles, including mobile homes, was required to have a license annually from the Motor Vehicles Division, running from January 1 and expiring December 31 of each year. ORS 481.305(1); 481.315(1). Along with the application, the applicant was required to provide certain information, pay a license fee of $5 and "[d]eliver to the division a bond complying with ORS 481.310." ORS 481.305(2), (3). A new license application was required each year; there was no provision for any modified

tion commissioner, in the sum of $5,000, in such form and upon such conditions as the commissioner may designate. Every broker's permit shall expire on June 30 in each year, and may be renewed upon written application, which application must be filed not less than 30 days prior to the expiration date of the permit for which renewal is sought, and a filing fee of $50 shall accompany each application for such renewal. Such renewal application may be made without filing further statements or furnishing any further information unless specifically required by the corporation commissioner."

renewal application. Therefore, in contrast to the statute in *New Amsterdam,* a bond was required each year with each application. ORS 481.310(1) provided that the bond be executed to the State of Oregon for $15,000 and that it be conditioned that the licensee should conduct business as a dealer "without fraud or fraudulent representation and without violating any of the provisions of [chapter 481]."

Each bond instrument provided to the Motor Vehicles Division by the dealer here specifically indicated that it expired on December 31 of the year for which the bond was provided. The number on each of the three instruments here relevant (for years 1980, 1981 and 1982) was the same. The bond contained the conditions as required by statute. Each year, a bond renewal inquiry form letter was provided to the dealer, on which the surety could mark one of three statements:

"A.   BOND CONTINUES INDEFINITELY UNLESS TERMINATION NOTICE OR EVIDENCE IS RECEIVED.

"B.   BOND EXPIRES AUTOMATICALLY BUT MAY BE EXTENDED BY CONTINUATION CERTIFICATE.

"C.   BOND EXPIRES AUTOMATICALLY BUT A NEW BOND MUST BE ISSUED IN ORDER TO CONTINUE COVERAGE."

On each of the notices, the surety had marked "C," indicating that a new bond must be issued.

We conclude that *New Amsterdam* is not dispositive. The statute there required proof of a bond only at the time of initial application. Here, the statute provides that a bond be delivered with each year's application. In *New Amsterdam,* the bonds did not specify any expiration or renewal date. Here, the bonds provided by defendant expired at the end of each year and could not be renewed as such. Unlike the statutory bonding scheme in *New Amsterdam,* a dealer may not continue bond coverage into the next year without applying for and receiving approval of a new bond coverage.

The question remains whether the bonds are separate or continuing. The liability of a surety under a complying statutory bond is measured and defined by the statute requiring the bond. *State ex rel Dyer v. Francis,* 152 Or 448, 451, 54

P2d 297 (1936); *So. Sea. Auto Auction v. W. Cas.,* 41 Or App 707, 711, 598 P2d 1269, *rev den* 288 Or 173 (1979). The statute requires that an applicant "[d]eliver to the division a bond complying with ORS 481.310" with each yearly application. ORS 481.305(3)(b). If no bond is provided, no license can be issued. ORS 481.310 provides that the bond shall be in the sum of $15,000. Neither of the statutes specifically addresses whether the bond must be new and separate or whether it can be a continuing, renewed bond. However, the statute is remedial for the protection of persons injured by a bonded party. It should be liberally construed to accomplish its purpose. *Robinson v. Builders Board,* 20 Or App 340, 343, 531 P2d 752 (1975).

■ ■ We hold that the statute contemplates a yearly, separate bond obligation for each year of licensure. This result does not work any hardship on defendant, because it provided that each bond expired at the end of the year and that a new bond had to be issued for coverage to continue. The express language in the bond is consistent with the statutory yearly bonding requirement.

■ Plaintiff also assigns as error the trial court's determination that payment of the bond limit in 1983 exonerated defendant from further liability on the bond. Because we have determined that there is a separate $15,000 liability for each of the years 1980, 1981 and 1982, and because defendant paid $15,000 to an earlier claimant, we must determine for which year that payment was made. The earlier $15,000 payment was made in February, 1983, on a claim for a loss which occurred in 1980. The trial court found that the dealer's conduct in violation of ORS chapter 481, occurred in 1980, although the loss that resulted from dealer's violation did not occur until 1982.

Defendant issued bonds of $15,000 to the dealer for the years 1980, 1981 and 1982. There is no dispute but that plaintiff was injured by the dealer's conduct in 1981 in the amount of $53,702.05 and in 1982 in the amount of $14,898. Accordingly, we reverse and remand for entry of judgment.

Reversed and remanded for entry of judgment for plaintiff for $15,000 on the 1981 bond and $14,898 on the 1982 bond.