(860 P.2d 31)

No. 68,826

BARBARA YENZER NICKLIN, *Appellee*, v. JOHN HARPER, individually and d/b/a SUNSHINE MOTORS, and HARTFORD FIRE INSURANCE COMPANY, *Garnishee/Appellant*.

Opinion filed September 10, 1993.

*Thomas J. Wilder,*, of Sloan, Listrom, Eisenbarth, Sloan & Glassman, of Topeka, for appellant.

*Robert T. Cornwell,* of Law Offices of Robert T. Cornwell, of Wichita, for appellee.

Before LARSON, P.J., LEWIS, J., and JOHN ANDERSON III, District Judge, assigned.

LARSON, J.: Hartford Fire Insurance Company (Hartford) appeals the trial court's determination that a motor vehicle dealer bond it issued to John Harper d/b/a Sunshine Motors was subject to garnishment to satisfy a judgment rendered in favor of Barbara Nicklin against Harper. Hartford also appeals the trial court's award of attorney fees to Nicklin under K.S.A. 40-2004.

Nicklin was granted a default judgment of $10,000 plus interest and costs against Harper for the sale of her 1986 Lincoln Town Car for $10,000, which was not remitted to Nicklin.

Harper was, at the time of the transaction, a used vehicle dealer licensed by the State of Kansas pursuant to K.S.A. 8-2401 *et seq.*

Hartford, a Connecticut insurance corporation authorized to do business in Kansas, issued the motor vehicle dealer bond to Harper that was required by the State of Kansas. K.S.A. 1992 Supp. 8-2404(i) requires every used or new vehicle dealer to "furnish and maintain a bond in such form, amount and with such sureties as the director approves, in the amount of $15,000, conditioned upon the applicant or licensee complying with the provisions of the statutes applicable to the licensee and as indemnity for any loss sustained by any person by reason of any act by the licensee in violation of any act which constitutes grounds for suspension or revocation of the license."

When Harper did not satisfy the judgment, Nicklin garnished Hartford to collect on the bond. Hartford answered that it held no money or property of Harper and refused to pay Nicklin.

Hartford moved for summary judgment, contending the trial court was without jurisdiction because Nicklin's exclusive remedy was through an administrative action before the Kansas Department of Revenue, Division of Motor Vehicles, and further that Harper had no property interest in the bond because it was payable to the State of Kansas, which Hartford contended had exclusive property rights in the bond.

Apparently, the summary judgment motion was not heard because a trial in the garnishment action was held.

The trial court found that although notified by Hartford about Nicklin's judgment against Harper, the director of the motor vehicle division did not demand that Hartford pay the judgment or intercede or perform in any manner. The trial court noted no official action had been taken by the director prior to the commencement of the garnishment action. The trial court found all that occurred was correspondence involving the director, Hartford, and Nicklin amounting only to official notice of the existence of the judgment.

The trial court noted the provisions of K.S.A. 8-2401 *et seq.* did not deprive Nicklin of access to collection remedies such as garnishment to enforce her judgment. It further held jurisdiction existed because the director had not taken control of the matter. The trial court ruled in favor of Nicklin and against Hartford, finding that:

(1) the purpose of the bond in K.S.A. 1992 Supp. 8-2404(i) is to provide a means of indemnification for any loss sustained by any person by reason of any act by the licensee in violation of any act which constitutes grounds for suspension or revocation of the license;

(2) Harper's actions violated the provisions of K.S.A. 8-2401 *et seq.*;

(3) the face of Hartford's bond specifically made the bond payable to " 'The State of Kansas and severally to such persons who shall conduct business with [defendant Harper]' ";

(4) K.S.A. 1992 Supp. 8-2404(i) directs the bond to be made payable to the State of Kansas for the benefit of any aggrieved party;

(5) the legislative intent was that the bond be required by a licensee to pay an aggrieved party for her loss arising from dealings with a licensee;

(6) Hartford presumably accepted a premium payment from Harper for the bond;

(7) as Harper was the principal of the bond, and as he presumably paid the premium, he had a property interest in the bond; and

(8) Nicklin had a beneficial interest in the bond as so provided by the statute and the bond itself.

The trial court granted judgment in favor of Nicklin and against Hartford for the amount of the judgment plus interest. The court further determined that Hartford had refused to pay the loss to which Nicklin was entitled and, pursuant to K.S.A. 40-2004, assessed attorney fees against Hartford in the amount of $3,100.

Hartford requested the trial court to reconsider the assessment of attorney fees. Hartford's motion was denied on August 14, 1992.

Hartford filed a notice of appeal on October 5, 1992. Counsel for Hartford filed an affidavit with this court stating he was first orally notified on October 1, 1992, that the motion for reconsideration had been denied and he did not receive written notice of the trial court's decision until October 8, 1992.

There are three issues to be considered in this appeal. The first is whether jurisdiction exists, the second is whether the trial court erred by finding the bond was subject to garnishment, and the third is whether attorney fees were properly awarded.

### Jurisdiction

We first reach the threshold argument by Nicklin that Hartford failed to file a timely notice of appeal. Nicklin contends we should not act as the factfinder to determine when Hartford first received notice that its motion to reconsider had been denied.

Nicklin also asserts the appeal should be dismissed because Hartford failed to appear at the motion hearing and because Hartford failed to request an extension of time to file the notice of appeal pursuant to K.S.A. 1992 Supp. 60-2103(a).

In *Daniels v. Chaffee*, 230 Kan. 32, 38, 630 P.2d 1090 (1981), Justice Prager opined:

"Applying a liberal interpretation of K.S.A. 60-258 and construing that statute along with the other statutes mentioned and Rule No. 134, we hold that, where a trial court enters judgment without giving notice to the parties or counsel as required by K.S.A. 60-258 and Rule No. 134, a valid judgment is entered which is subject, however, to being set aside when attacked by post-judgment motions and proceedings. The time for filing post-judgment motions or taking an appeal from a final judgment entered without notice commences to run when there has been a compliance with K.S.A. 60-258 and Rule No. 134. In each individual case, a rule of reason must be applied to insure that the rights of the parties are protected and that they are not denied their legal rights through forces beyond their control."

In *Danes v. St. David's Episcopal Church*, 242 Kan. 822, 825, 752 P.2d 653 (1988) (quoting K.S.A. 60-102), the Kansas Supreme Court emphasized that a liberal interpretation of our rules of civil procedure is required " 'to secure the *just*, speedy, and inexpensive determination of every action or proceeding.' " (Emphasis in original.)

The time for taking an appeal in this case did not begin to run until Hartford was notified of the judgment denying the motion for reconsideration. See *Danes*, 242 Kan. at 825; *Daniels*, 230 Kan. at 38. Counsel for Hartford was absent from the hearing at which the trial court denied the motion. The trial judge was required to cause written notice of the ruling to be mailed to

Hartford or its attorneys forthwith. Supreme Court Rule 134 (1992 Kan. Ct. R. Annot. 119).

Although our appellate courts have no power to consider evidence not submitted to the trial court, *Solomon v. Lampl,* 135 Kan. 469, 480, 11 P.2d 1028 (1932), this rule should not be so strictly applied so as to prevent us from considering the affidavit that written notice of the trial court's decision was not received by Hartford's counsel until October 8, 1992, in order for us to determine if jurisdiction over the appeal exists.

While we do not excuse trial counsel from determining when motions they file are regularly heard under court rules, it would be an abuse of judicial economy to remand this matter to the trial court for a determination of a question of fact which appears to be undisputed.

K.S.A. 1992 Supp. 60-2103(a) specifically provides:

"When an appeal is permitted by law from a district court to an appellate court, the time within which an appeal may be taken shall be 30 days from the entry of the judgment, as provided by K.S.A. 60-258, and amendments thereto, except that upon a showing of excusable neglect based on a failure of a party to learn of the entry of judgment the district court in any action may extend the time for appeal not exceeding 30 days from the expiration of the original time herein prescribed."

In this case, Hartford was orally notified of the trial court's ruling on October 1, 1992, and received written notification on October 8, 1992, within time to request an extension under K.S.A. 1992 Supp. 60-2103(a). However, the facts here fall squarely within the holding in *Daniels* that the time for appeal begins to run upon notification of the entry of judgment. Because Hartford filed its notice of appeal within 30 days of being so notified, no request for an extension was necessary. We hold jurisdiction exists to consider the appeal on the merits.

*Did the trial court err in finding the motor vehicle dealer bond issued by Hartford was subject to garnishment?*

K.S.A. 1992 Supp. 8-2404(i) provides in pertinent part:

"Every applicant or licensee who is or applies to be a used vehicle dealer or a new vehicle dealer shall furnish and maintain a bond in such form, amount and with such sureties as the director approves, in the amount of $15,000, conditioned upon the applicant or licensee complying with the provisions of the statutes applicable to the licensee and as indemnity for

any loss sustained by any person by reason of any act by the licensee in violation of any act which constitutes grounds for suspension or revocation of the license. To comply with this subsection, every bond shall be a corporate surety bond issued by a company authorized to do business in the state of Kansas and shall be executed in the name of the state of Kansas for the benefit of any aggrieved party. . . . The proceeds of the bond on deposit or in lieu of bond provided by subsection (j), shall be paid upon receipt by the director of a final judgment from a Kansas court of competent jurisdiction against the dealer and in favor of an aggrieved party."

Hartford makes two arguments in support of its contention that the trial court erred. It claims, first, the bond is not property, funds, or credits which are subject to garnishment, and second, the proper remedy to enforce rights to recover under the bond is an administrative action through the division of motor vehicles.

In support of its first argument, Hartford contends both K.S.A. 1992 Supp. 8-2404(i) and the language of the bond require it to be bound only to the State of Kansas for the benefit of Harper's customers who suffer damages because of his conduct. Hartford further contends that because Harper does not have any rights to the bond, the bond cannot be subject to garnishment.

In response, Nicklin more realistically focuses on all of the language of the bond. She expressly asserts the statute requires the bond to be "executed in the name of the state of Kansas for the benefit of any aggrieved party." She notes the specific wording of the bond states it runs "unto the STATE OF KANSAS and severally to such persons who shall conduct business with said principal and its capacity as a motor vehicle dealer."

Whether the corporate surety bond issued by Hartford in this case is subject to garnishment is a question of law subject to unlimited review by this court. See *Hutchinson Nat'l Bank & Tr. Co. v. Brown,* 12 Kan. App. 2d 673, 674, 753 P.2d 1299, *rev. denied* 243 Kan. 778 (1988). See also *West v. Collins,* 251 Kan. 657, 661, 840 P.2d 435 (1992) (interpretation of a statute is a question of law and court must interpret statute to give it the effect intended by the legislature).

Hartford argues that the terms of K.S.A. 1992 Supp. 8-2404(i) must be read into the bond and that "conditions not required by statute will be stricken" as surplusage; Nicklin contends that Hartford is bound by the terms of its bond and if it extends coverage or liability beyond that required by the statute, it is bound by

such terms. We need not reach or answer this question since under either interpretation the result and our decision would be the same.

"Garnishment is a provisional remedy created by statute to enable a creditor to satisfy a debt out of property, money or credits belonging to the debtor which are in the possession or under the control of another." *Miller v. Clayco State Bank*, 10 Kan. App. 2d 659, 663, 708 P.2d 997, *rev. denied* 238 Kan. 878 (1985).

"Property embraces everything which is or may be the subject of ownership, whether a legal ownership, or whether beneficial, or a private ownership." Black's Law Dictionary 1095 (5th ed. 1979). Property is a word "commonly used to denote everything which is the subject of ownership, corporeal or incorporeal, tangible or intangible, visible or invisible, real or personal. . . . It extends to every species of valuable right and interest." Black's Law Dictionary 1095.

To be subject to garnishment, the debtor must have some right to or interest in the property. 6 Am. Jur. 2d, Attachment and Garnishment § 92. "[U]nder our statutes any interest a person may have in property, legal or equitable, is subject to garnishment." *Herd v. Chambers*, 158 Kan. 614, 631, 149 P.2d 583 (1944). See *Koelliker v. Denkinger*, 148 Kan. 503, 509, 83 P.2d 803 (1938). A party is entitled to garnishment when the debtor owns a beneficial interest in the property garnished. 10 Kan. App. 2d at 662.

This situation involves a corporate surety bond. A surety is defined as "one who becomes responsible for the debt, default or miscarriage of another; but in a narrower sense, a surety is a person who binds himself for the payment of a sum of money, or for the performance of something else, for another who is already bound for such payment or performance." *SNML Corp. v. Bank*, 41 N.C. App. 28, 36, 254 S.E.2d 274 (1979).

"Every suretyship involves three parties: (a) the one for whose account the contract is made, whose debt or default is the subject of the transaction and who is called the principal; (b) the one to whom the debt or obligation runs, the obligee in suretyship, called the creditor; and (c) the one who agrees that the debt or obligation running from the principal to the creditor shall be performed, and who undertakes on his own part to perform it if

the principal does not, called the surety." Stearns, Law of Suretyship § 1.4 (5th ed. 1951).

"One of the generally recognized functions of a surety is to save the creditor from the inconvenience and delay of enforced collection from the principal." Simpson on Suretyship § 51, p. 263 (1950). "The relation of suretyship grows out of the assumption of a liability at the request of another, and for his benefit." 74 Am. Jur. 2d, Suretyship § 7.

It is clear that once Nicklin obtained a judgment against Harper, she could have brought a separate action against Hartford to obtain recovery on the bond it issued to Harper. We see no reason for the courts to be burdened by a separate action when the same result can be obtained in the garnishment action, where Hartford can raise any defense which it believes to be valid. *McCreery v. McCreery,* 210 Kan. 99, 102, 104, 499 P.2d 1118 (1972).

Our research reveals no Kansas case allowing garnishment of a motor vehicle dealer bond, but the identical procedure has been used for the resolution of bad faith and negligence issues in compromising a claim against an insured for an amount within the policy limits. The always lucid discussion of Justice Fontron in *Gilley v. Farmer,* 207 Kan. 536, 485 P.2d 1284 (1971), pointed to *Stamps v. Consolidated Underwriters,* 205 Kan. 187, 468 P.2d 84 (1970), where garnishment was employed to determine the liability of an insurance carrier to pay judgments recovered against its insured within the policy limits. Justice Fontron stated:

"While no judgment was involved [in *Stamps v. Consolidated Underwriters*] which exceeded the face of the policy, we see little distinction in principle between a garnishment proceeding to establish an indebtedness within policy limits and one to establish an indebtedness outside these limits arising from a breach of the insurer's duty to exercise reasonable care and good faith in settling a claim against the insured." 207 Kan. at 543-44.

Although the judgment here is a liquidated one, an issue in *Gilley v. Farmer* was whether garnishment was prohibited because the claim was unliquidated. In settling this contention, Justice Fontron stated: "Our Code does not specifically denote what claims of indebtedness may be subject to garnishment. Instead, the legislative approach to that question was by way of exceptions." 207 Kan. at 542.

It is clear that none of the exceptions of K.S.A. 60-724 would prohibit the garnishment of Harper's bond by Nicklin, and we see no valid reason not to approve the procedure here utilized in attempting to collect her judgment.

An excellent discussion of garnishment in Kansas is found in Graves, *Garnishment in Kansas: a Procedural Paradox*, 49 J.K.B.A. 129 (1980), which speaks of the wide variety of forms of personal property subject to garnishment. The property we include here does not conflict with the limited forms of property that may not be garnished as stated in the Graves article. For a further discussion of the expansion of garnishment proceedings to insurance litigation, see Mullin, *Survey of Kansas Law: Insurance*, 21 Kan. L. Rev. 157-59 (1972).

With utilization of the garnishment procedure clearly justified, we further consider if our construction of the bond at issue is in accordance with the public purpose for which such bonds are required.

In *Local No. 1179 v. Merchants Mutual Bonding Co.*, 228 Kan. 226, 229, 613 P.2d 944 (1980), the Supreme Court stated: "A surety bond is to be construed in the light of the circumstances in which it is given, so as to effectuate its purpose." See *Bryant Motors v. American States Ins.*, 118 Idaho 796, 798, 800 P.2d 683 (1990) ("[Surety] bonds are construed in the light of the statute creating the obligation secured and of the purposes for which the bond is required, as expressed in the statute.").

K.S.A. 8-2402 sets forth the declaration of public policy behind licensing motor vehicle dealers:

"**Declaration of public policy.** It is hereby declared to be the public policy of this state to provide for fair and impartial regulation of those persons engaged in manufacturing, distributing or selling of vehicles. The provisions of this act which are applicable to such activities shall be administered in such a manner as will continue to promote fair dealing and honesty in the vehicle industry and among those engaged therein without unfair or unreasonable discrimination or undue preference or advantage. It is further declared to be the policy of this state to protect the public interest in the purchase and trade of vehicles, so as to insure protection against irresponsible vendors and dishonest or fraudulent sales practices and to assist, provide and secure a stable, efficient, enforceable and verifiable method for the distribution of vehicles to consumers in the state of Kansas and provide a system of tracking the flow of vehicles and their parts as well as preserving supporting services for consumers purchasing or otherwise acquiring vehicles."

The Court of Appeals of Oregon has declared that a statute requiring motor vehicle dealers to be bonded "is remedial for the protection of persons injured by a bonded party. It should be liberally construed to accomplish its purpose." *General Elec. Credit Corp. v. United Pac. Ins. Co.*, 80 Or. App. 129, 135, 722 P.2d 15, *rev. denied* 302 Or. 86 (1986).

The bond that K.S.A. 1992 Supp. 8-2404(i) required Harper to obtain was intended to protect persons harmed by Harper's actions, such as his failure to remit to Nicklin the proceeds from the sale of her motor vehicle. We are convinced Harper's actions were a violation of K.S.A. 1992 Supp. 8-2410, for which a license could have been revoked; those actions triggered the provisions of K.S.A. 1992 Supp. 8-2404(i), requiring Nicklin to be idemnified "for any loss sustained by [Nicklin] by reason of any act by [Harper] in violation of any act which constitutes grounds for suspension or revocation of the license."

Hartford's assertion that Harper had no interest in or rights under the bond is wrong. The furnishing of the bond was an essential part of Harper's being allowed to obtain a license as a used vehicle dealer from the State of Kansas. We hold the judgment against Harper was a loss within the bond coverage which was properly collectable by the garnishment proceedings instituted herein.

We specifically decline to adopt Hartford's fallback position that Nicklin may only enforce her rights to recover under the bond by an administrative action through the division of motor vehicles.

The justification for Hartford's argument is the final sentence of K.S.A. 1992 Supp. 8-2404(i), which reads as follows:

"The proceeds of the bond on deposit or in lieu of bond provided by subsection (j), shall be paid upon receipt by the director of a final judgment from a Kansas court of competent jurisdiction against the dealer and in favor of an aggrieved party."

Subsection (j) of K.S.A. 1992 Supp. 8-2404 allows the licensee to satisfy the bond requirement by depositing with the state treasurer cash, negotiable bonds, negotiable certificates of deposit, or an irrevocable letter of credit equal to or greater than the required bond amount in lieu of furnishing the surety bond. A bond was filed in this instance.

Apparently, the director received a copy of Nicklin's judgment against Harper, but no administrative action was taken by the director and Hartford made no voluntary payment to Nicklin.

A review of the Kansas Administrative Regulations reveals that no specific administrative procedures for recovery against the surety on a motor vehicle dealer bond have been promulgated.

There is no statutory language which prevents or precludes an aggrieved party with a judgment against a licensed motor vehicle dealer from seeking the remedies allowed by the Code of Civil Procedure against the surety on the bond rather than attempting some sort of nonexistent administrative procedure.

In the absence of specific statutory provisions or administrative regulations, we hold there is no required exclusive administrative remedy and that Nicklin's garnishment of Hartford was a permissible method of collecting her money judgment.

*Did the trial court err by assessing attorney fees against Hartford pursuant to K.S.A. 40-2004?*

K.S.A. 40-2004 provides in pertinent part:

"**Attorney fees.** In any action in which any judgment is rendered against an unauthorized, foreign or alien insurer upon a contract of insurance issued or delivered in this state to a resident thereof or to a corporation authorized to do business therein, if it appears from the evidence that such insurer has refused to pay such loss, the court in rendering such judgment shall allow the plaintiff a reasonable sum as an attorney's fee to be recovered and collected as part of its costs."

Hartford contends the trial court erred by awarding Nicklin's attorney fees pursuant to K.S.A. 40-2004 because it is authorized to issue insurance policies in Kansas and is not covered by the provisions of the statute.

Nicklin responds by arguing the logical interpretation of the phrase "unauthorized, foreign or alien insurer" is that all three adjectives are in the disjunctive, otherwise the comma has no meaning and the allowance of attorney fees is required. We disagree.

K.S.A. 40-2004 is included in an act entitled "Unauthorized Insurers Process Act," K.S.A. 40-2001 *et seq.* See K.S.A. 40-2006. The purpose of the Act is to "subject certain insurers to the jurisdiction of courts of this state in suits by or on behalf of insureds or beneficiaries under insurance contracts." K.S.A. 40-2001.

In *Director of Property Valuation v. Golden Plains Express, Inc.,* 13 Kan. App. 2d 48, 49, 760 P.2d 1227 (1988), this court stated: "Legislative intent is to be determined from a consideration of the entire act, and effect must be given, if possible, to the entire act and every part thereof."

The phrase "unauthorized foreign or alien insurer" is also found in K.S.A. 40-2002(a) and K.S.A. 40-2003(a) and (c) of the Act, but without a comma separating the words "unauthorized" and "foreign."

It appears the legislature intended the word unauthorized to modify the phrase foreign or alien insurer throughout the entire Act. If we disregard the comma between unauthorized and foreign in K.S.A. 40-2004, we would construe the Act in accord with its intended purpose.

In 73 Am. Jur. 2d, Statutes § 218, the following is stated:

"[P]unctuation is a minor, and not a decisive or controlling, element in the interpretation of a statute. Indeed, punctuation is generally regarded as a fallible standard of the meaning of a statute, and the last resort as an aid in its interpretation. Thus, the courts will disregard the punctuation of a statute, unless they find it necessary to repunctuate to give effect to what otherwise appears to be its true meaning."

The Unauthorized Insurers Process Act, including K.S.A. 40-2004, applies to unauthorized insurers. See *Groff v. Automobile Owners Safety Ins. Co.,* 180 Kan. 518, 519, 306 P.2d 130 (1957); *Farmco, Inc. v. Explosive Specialists, Inc.,* 9 Kan. App. 2d 507, 513, 684 P.2d 436 (1984). K.S.A. 40-2004 does not apply to Hartford. We hold the trial court erred in awarding attorney fees to Nicklin pursuant to K.S.A. 40-2004.

This is not a case where attorney fees could properly be awarded under K.S.A. 40-256 because a payment was withheld without just cause or excuse. The manner of collecting on the bond raised issues of first impression in our state.

Finally, Nicklin requests sanctions against Hartford, suggesting this is a frivolous appeal. This claim has no merit. Hartford was successful in its contention as to attorney fees, and the other issues raised have not been previously considered by our courts.

Affirmed in part, reversed in part, and remanded.