**WOODS OF SOMERSET, LLC, et al., Respondent,**

v.

**DEVELOPERS SURETY AND INDEMNITY COMPANY, Appellant.**

**Nos. WD 75533, WD 75534.**

Missouri Court of Appeals, Western District.

Sept. 24, 2013.

Motion for Rehearing and/or Transfer to the Supreme Court Denied Oct. 29, 2013.

Application for Transfer Denied Feb. 4, 2014.

John W. Roe, for respondent.

Lawrence Lerner, Kansas City, for appellant.

Before Division I: VICTOR C. HOWARD, Presiding Judge, JOSEPH M. ELLIS, Judge and ANTHONY REX GABBERT, Judge.

VICTOR C. HOWARD, Judge.

This case arises from the cross-claims and third-party claims of Developers Surety and Indemnity Company ("DSI") against Daniel Waldberg, Brenda Waldberg, Barney Ashner, Marlene Ashner, and Woods of Somerset, LLC ("the Somerset defendants") relating to an indemnity agreement they signed to obtain a payment bond in connection with the development of a subdivision. The trial court entered judgment in favor of the Somerset defendants concluding that the indemnity agreement was unenforceable because it was not properly executed and because there was no meeting of the minds. On appeal, DSI contends that the indemnity agreement was properly executed because all four individuals with any ownership interest in any of the Somerset entities signed the document, that it applies to each of the Somerset defendants, and that it was accepted by its use in obtaining the bond that the agreement was made to induce and delivering it to the City of Kansas City. DSI also contends that the trial court erred in concluding that there was no meeting of the minds because such conclusion was irrelevant due to the indemnity agreement being unambiguous. The judgment of the trial court is reversed, and the case is remanded.

## FACTS

Bardan, Inc. was a company owned by Barney Ashner, Marlene Ashner, Daniel Waldberg, and Brenda Waldberg or their personal or family trusts. Somerset Development, Inc. is a subsidiary of Bardan, Inc., and is the sole member of Woods of Somerset, LLC. Woods of Somerset, LLC owned land that was being developed into

the Woods of Somerset subdivision. For the development of the subdivision, Woods of Somerset, LLC needed to extend the City of Kansas City's ("the City") water main, so it submitted plans for an extension that listed "Somerset Development" as the applicant, and the plans were accepted by the City. After receipt and acceptance of a bid for the water main extension from Haines & Associates Construction Co., Inc. ("Haines"), the Somerset defendants entered into a contract for the extension with the City on behalf of "Somerset Development." Pursuant to statute and city charter, the City required the Somerset defendants to procure a payment bond to cover the water main extension work.

The Somerset defendants asked their insurance agent, Michael Schroeger, to procure an appropriate payment bond for them. Subsequently, Mr. Schroeger presented the Somerset defendants a two-page Subdivision/Plat Short Form Application ("Application") for signing. Page one of the Application document was a fill-in-the-blanks form calling for principal information and information regarding the owners, the project, and the bond. Page two of the Application document stated in all capital letters in bold at the top, "INDEMNITY AGREEMENT—READ CAREFULLY." Below was preprinted indemnity contract language filling approximately half the page, followed by a text box which read, in pertinent part: "IMPORTANT.... If a Limited Liability Company, two managers/members must sign on behalf of the company. The two authorized managers/members and their spouses must sign personal indemnity below."

Below the text were eleven lines for names and signatures, in two columns. In the left column were six lines—one for the "Company Name," two for the "Name/Title" of the persons signing on behalf of the company, and two for their signatures. In the right column were six lines—two for the names of "Indemnitor," two for their signatures, and two for their spouse's signatures.

The Somerset defendants signed the second page of the Application and left Mr. Schroeger's office. Thereafter, the handprinted portions were filled in. Somerset Development, LLC was printed on the Company Name line. Barney Ashner's name was printed on the Name/Title line below it as a person signing on behalf of the company. His signature appeared on the signature line below his printed name. Marlene Ashner's name was printed on the next Name/Title line for a person signing on behalf of the company, and her signature appeared on the signature line below her printed name. In the right column, Dan Waldberg's name was printed on the first Indemnitor line, and his signature appeared below that on the signature line. Brenda Waldberg's signature was on the spouse's signature line. Her name was then printed on the second Indemnitor line. Nobody signed their name on the second Indemnitor's signature or spouse's signature lines.

Following the submission of the Application, DSI issued the Somerset defendants a payment bond listing Somerset Development, LLC as the principal and applicant, to cover the contract for water main extension with the City. Barney Ashner signed the bond, and it was delivered to the City. Subsequently, Haines made a claim against the bond. DSI responded to Haines and also brought counterclaims and third-party claims against each of the Somerset defendants. DSI alleged that, based on the indemnity agreement contained in the Application, it was entitled to indemnity and specific performance in response to the collateral demands from the Somerset defendants jointly and severally.

After the trial court dismissed Haines's claims against DSI and denied Haines's motion for reconsideration, a bench trial was held at which Haines and the Somerset defendants filed a stipulation in which Woods of Somerset, LLC consented to judgment against it in the amount of $108,697.24 in exchange for Haines's dismissal with prejudice of its claims against the individual Somerset defendants. At the time of the trial, Woods of Somerset, LLC did not have any assets. The trial then proceeded as to the indemnity agreement.

The trial court found that Barney Ashner and Dan Waldberg never intended to be personal guarantors when they signed the Application, and that neither would have signed the Application if they knew they would be personal guarantors. The trial court further found that Barney Ashner and Marlene Ashner were not two managers/members of Somerset Development, LLC, Woods of Somerset, or Somerset Development, Inc. Additionally, the trial court found that two managers/members and their spouses did not sign on the right side of the second page of the Application "where the indemnity language is contained."

Based on these factual findings, the trial court concluded that the Application containing the indemnity agreement was not properly executed and not enforceable against the separate defendants because two managers/members of the company did not sign on behalf of the company in the left column on the second page, and also two authorized managers/members and their spouses did not sign in the right column on the second page as required. The trial court further concluded that because the Somerset defendants never believed they were signing a personal guar-

anty, there was no meeting of the minds, and thus no contract was formed with respect to the indemnity agreement in the Application. The court reasoned that there was no mutual assent between the parties as to the terms as required to form a contract, and thus the elements of an enforceable contract were not met.

The trial court issued its judgment in favor of the Somerset defendants. DSI appeals.

## ANALYSIS

### Standard of Review

 Appellate review of a court tried case is governed by the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The judgment of the trial court will be affirmed unless it is unsupported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law. *Beeler v. Martin*, 306 S.W.3d 108, 110 (Mo.App.W.D.2010) (citing *Murphy*, 536 S.W.2d at 32). Evidence and inferences are viewed in the light most favorable to the trial court's judgment, and all contrary evidence and inferences are disregarded. *Id.* We defer to the trial court's resolution of factual issues and witness credibility determinations. *Id.* Questions of interpretation and application of a contract are reviewed de novo as a matter of law, and as such, this Court does not defer to the trial court's implicit determination that the indemnity agreement was ambiguous. *Care Center of Kansas City v. Horton*, 173 S.W.3d 353, 355 (Mo.App.W.D.2005).

### Discussion

In its second point on appeal,[1] DSI argues that the trial court erred in conclud-

1. Because we find DSI's second point on appeal dispositive, we decline to address its first point.

ing that there was no meeting of the minds because such conclusion was irrelevant due to the indemnity agreement being unambiguous. The Somerset defendants argue in response that the court could not have found the contract was unambiguous because when the defendants signed there were important parts missing that were filled in after their departure and filled in incorrectly.

■ The focus of contract interpretation is to determine the parties' intentions and give effect to those intentions. *Care Center of Kansas City,* 173 S.W.3d at 355. Unless the contract is ambiguous, the parties' intent is to be ascertained from the contract alone, and not extrinsic or parol evidence. *Id.* The words of a contract are to be given their plain, ordinary meaning, and ambiguity arises only where the "terms are reasonably open to more than one meaning, or the meaning of the language used is uncertain." *Id.* Ambiguity does not arise merely because the parties disagree over the meaning of a provision, and courts may not create ambiguity by distorting contractual language that may otherwise be reasonably interpreted. *Id.*

■ Where the party signing a personal guaranty on behalf of another has disclosed the principal and set forth the capacity in which he signed the document, liability falls on the principal not on the individual signing on behalf of the principal. *Warren Supply Co. v. Lyle's Plumbing, LLC,* 74 S.W.3d 816, 819 (Mo.App. W.D.2002). "[W]hen a signature's form is inconsistent with the assumption of personal liability stated in the contract, an ambiguity is created as to whether the individual is personally liable under the contract's terms[;]" however, "[a]ny ambiguity . . . must arise *from the guaranty agreement itself.*" *Id.* at 819–20 (emphasis added). A contract that clearly evidences the personal nature of the guaranty by the specific language used—that is, a contract in which personal liability is clearly stated—leaves no room for ambiguity, even where the party signing does so in his or her corporate capacity but does not disclose the principal. *See Id.* at 820–21 (holding that because appellant did not disclose his principal when he signed a clear and unambiguous personal guaranty, no ambiguity existed in regard to the personal guaranty, and the circuit court correctly did not consider his parol evidence).

■ The indemnity agreement in the instant case is not ambiguous. Although there were blanks remaining on the document when the Somerset defendants signed, the preprinted application form clearly indicates on page two, in all capital letters, in boldface type, at the top, "INDEMNITY AGREEMENT—READ CAREFULLY." The first sentence of the agreement refers to "each of the undersigned" as "(collectively "indemnitors")." Furthermore, set off by its location in a text box, is an instruction reading: "IMPORTANT. . . . If a Limited Liability Company, two managers/members must sign on behalf of the company. The two authorized managers/members and their spouses must sign personal indemnity below." The signature area is clearly labeled, indicating where each person should sign and print his or her name and the capacity in which each signature was to be made, on behalf of the company or firm ("Name/Title") or personally ("Indemnitor"). The plain and ordinary meaning of the words used in the indemnity agreement reveals nothing to suggest the terms are uncertain or capable of conflicting interpretations. The indemnity agreement clearly evidences the personal nature of the guaranty and unambiguously states that the purpose of the agreement is to "induce [DSI] . . . to issue the bond . . ."

■ The actions of the Somerset defendants in signing the document in the

manner in which they did, avoiding anyone signing the second "Indemnitor" line and not filling out and signing the application in accordance with instructions printed on the form that were applicable to them, were not sufficient to give rise to any ambiguity as to whether they were personally liable under the agreement. Any ambiguity "must arise from the guaranty agreement itself," and, as discussed above, the subject indemnity agreement was not ambiguous. *Id.* at 819–20. "Evidence of how a contract is understood or acted upon by the parties is only relevant when the contract or a contract term is unclear." *DCW Enters., Inc. v. Terre du Lac Ass'n, Inc.,* 953 S.W.2d 127, 131 (Mo.App.E.D.1997)(citing *Smith v. Taylor–Morley, Inc.,* 929 S.W.2d 918, 922 (Mo. App.E.D.1996)).

"The written contract is conclusively presumed to merge all prior negotiations and to express the final agreement of the parties." *J.W. Jenkins Sons Music Co. v. Johnson,* 175 Mo.App. 355, 162 S.W. 308, 309 (1914). "To permit a party when sued on a written contract to admit that he signed it but to deny that it expresses the agreement he made, or to allow him to admit that he signed it but did not read it or know its stipulations, would absolutely destroy the value of all contracts and negotiable instruments." *Id.* "The reason underlying the rule is to give stability to written agreements and to remove the temptation and possibility of perjury, which would be afforded if parol evidence was admissible." *Id.* The trial court's implicit finding that the contract was ambiguous as to whether the defendants were personally liable under the agreement, and its resultant conclusion that they were not personally liable, were erroneous. As such, the trial court's conclusion that there was no meeting of the minds stemmed from an erroneous declaration or application of the law. DSI's second point on appeal is granted. The judgment of the trial court is reversed, and the cause is remanded for entry of judgment in favor of DSI.

All concur.