Rashaunda BELL, Respondent,

v.

WESTERN SURETY COMPANY,
Appellant.

WD 79835

Missouri Court of Appeals,
Western District.

April 25, 2017

Motion for Rehearing and/or Transfer
to Supreme Court Denied May
25, 2017

110

Lee R. Anderson, Kansas City, MO, Attorney for Respondent.

James S. Kreamer and Noemi F. Donovan, Kansas City, MO, Attorneys for Appellant.

Before Division Two: Thomas H. Newton, Presiding Judge, and James Edward Welsh and Karen King Mitchell, Judges.

Karen King Mitchell, Judge

Western Surety Company (Surety) appeals the entry of judgment against it on Rashaunda Bell's petition for payment of money owed under a motor vehicle dealer bond issued by Surety and its principal, KC Trend Auto, in favor of the State of Missouri. Surety brings four points on appeal, all arguing that it should not have been held liable for the full amount of the bond ($25,000). Finding no error, we affirm.

## Background [1]

KC Trend Auto was in the business of selling motor vehicles, and, as such, was required by § 301.117.1 [2] to secure "a corporate surety bond in the amount of twen-ty-five thousand dollars and conditioned on the faithful performance of all requirements for the lawful obtaining or receiving of certificates of ownership for motor vehicles." KC Trend Auto secured the required bond from Surety. Per statute, "[t]he bond shall be an indemnity for any loss sustained by reason of the acts of the person bonded when such acts constitute grounds for the suspension or revocation of his license." § 301.117.2. The bond itself provided that Surety "shall indemnify any person dealing or transacting business with the Principal [KC Trend Auto] for any loss sustained by any person by reason of the acts of Principal provided such acts of Principal constitute grounds for suspension or revocation of Principal's license [to sell motor vehicles]."

On February 28, 2014, Bell attempted to purchase a vehicle from KC Trend Auto for $4,995. Bell paid KC Trend Auto $2,000 as a down payment and financed the balance. KC Trend Auto, however, never conveyed title for the vehicle to Bell, and the vehicle broke down shortly thereafter in a manner rendering it unusable. On March 10, 2014, Bell returned the vehicle to KC Trend Auto. Because Bell had never received any title, the financing company agreed to relieve Bell of her obligations under the finance contract. Bell demanded that KC Trend Auto refund her down payment, but KC Trend Auto refused.

On October 14, 2014, Bell filed a three-count petition against KC Trend Auto, alleging a violation of the Missouri Merchandising Practices Act and common law fraud, as well as seeking a declaration that the attempted sale was fraudulent and void. Despite being served on October 25, 2014, KC Trend Auto failed to respond to

---

1. The facts are viewed in the light most favorable to the verdict. *Curry Inv. Co. v. Santilli*, 494 S.W.3d 18, 22 n.1 (Mo. App. W.D. 2016).

2. All statutory citations are to the Revised Statutes of Missouri (2000), as updated through the 2013 Cumulative Supplement.

Bell's petition. On March 12, 2015, the court found KC Trend Auto to be in default and took evidence from Bell on her petition. On March 17, 2015, the court entered a judgment finding that KC Trend Auto "failed to provide the vehicle title to [Bell], in violation of Mo. Rev. Stat. § 301.210.4, and ... obtained money, barter and exchange from ... Bell, by fraud, deception and misrepresentation, all in violation of Sections 301.562.2(5) and 407.020 and 407.025." The court further found that, as a result of the violations, Bell was "entitled to recover ... [a]ctual damages in the amount of $30,399.72," which encompassed Bell's down payment, payments for insurance and a keyless entry for the vehicle, loss and restricted use of the vehicle, Bell's time and labor for having to seek and use alternate transportation and attempting to cope with and resolve KC Trend Auto's misconduct, lost income due to the inability at times to get to work because she lacked the vehicle, extreme inconvenience and embarrassment and emotional distress. The court further awarded Bell $5,093.63 in attorneys' fees, expenses, and costs, as well as $30,000 in punitive damages.

Thereafter, pursuant to § 301.560.1(3), Bell forwarded a copy of the judgment to the Missouri Department of Revenue to make a claim on the motor vehicle dealer bond. On April 9, 2015, the Department notified Surety of the judgment entered against its principal on the bond. Bell then made a demand upon Surety to pay the bond, but Surety refused. Accordingly, Bell filed a two-count petition against Surety, alleging violation of § 301.560 and vexatious refusal to pay.

Surety filed an answer, denying any refusal to pay; instead, Surety claimed "that it had the right to investigate the claim to determine whether the damages claimed were covered under the terms of the Bond." Surety claimed that "the damages asserted ... may not be recoverable under the terms of the Bond, including but not limited to damages for alleged emotional distress, because recoverable damages are limited to those that are a result of acts which could result in the suspension or revocation of a motor vehicle dealer's license." Surety sought partial summary judgment, arguing that Bell was "not entitled to recover her alleged damages for loss of use of the vehicle she attempted to purchase from KC Trend Auto, LLC nor is she entitled to recover alleged damages for emotional distress pursuant to the provisions of a motor vehicle dealer bond."

The trial court denied Surety's motion for partial summary judgment, and after a hearing, entered a judgment in favor of Bell on Count I (violation of § 301.560) and in favor of Surety on Count II (vexatious refusal to pay). Surety appeals.

### Standard of Review

"Appellate review of a court[-]tried case is governed by the standard set forth in *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976)." *Woods of Somerset, LLC v. Developers Sur. and Indem. Co.*, 422 S.W.3d 330, 334 (Mo. App. W.D. 2013). "The judgment of the trial court will be affirmed unless it is unsupported by substantial evidence, is against the weight of the evidence, or erroneously declares or applies the law." *Id.* "Evidence and inferences are viewed in the light most favorable to the trial court's judgment, and all contrary evidence and inferences are disregarded." *Id.*

### Analysis

Surety raises four points on appeal. First, Surety argues that the court erred in holding it "strictly liable" on the bond without allowing it to contest the damages awarded in the underlying tort suit. Second, Surety argues that the court erred in

describing the motor vehicle dealer bond as a "judgment bond." Third, Surety argues that the court erred in determining that emotional distress damages were recoverable under the bond. And, finally, Surety claims that the court erred in determining that "loss of use" damages were recoverable under the bond. Because all of the claims are related, we address them together.

## A. Motor Vehicle Dealer Bonds

In Missouri, any person or entity that "conduct[s] a business, the purpose of which is to act as an agent for a fee in obtaining a certificate of ownership of a motor vehicle" must have a license to do so from the Department of Revenue. § 301.114.1. "The application for licensure shall be accompanied by a corporate surety bond in the amount of twenty-five thousand dollars and conditioned on the faithful performance of all requirements for the lawful obtaining or receiving of certificates of ownership for motor vehicles." § 301.117.1; see also § 301.560.1(3) ("Every applicant as a new motor vehicle franchise dealer, a used motor vehicle dealer, a powersport dealer, a wholesale motor vehicle dealer, trailer dealer, or boat dealer shall furnish with the application a corporate surety bond ... in the penal sum of twenty-five thousand dollars on a form approved by the department."). "The bond shall be an indemnity for any loss sustained by reason of the acts of the person bonded when such acts constitute grounds for the suspension or revocation of his license." § 301.117.2; see also § 301.560.1(3) ("The bond ... shall be conditioned upon the dealer complying with the provisions of the statutes applicable to

new motor vehicle franchise dealers, used motor vehicle dealers, powersport dealers, wholesale motor vehicle dealers, trailer dealers, and boat dealers."). Section 301.562.2 identifies a variety of acts constituting grounds for suspension or revocation of a dealer's license; among them is "[o]btaining or attempting to obtain any money, commission, fee, barter, exchange, or other compensation by fraud, deception, or misrepresentation." § 301.562.2(5).

 Bonds are to "be executed in the name of Missouri for the benefit of any aggrieved party; except, that the aggregate liability to all aggrieved parties shall, in no event, exceed the amount of the bond." § 301.117.2; see also § 301.560.1(3) (same). And "[t]he proceeds of the bond shall be paid upon receipt by the director of a final judgment from a court of competent jurisdiction against the principal and in favor of an aggrieved party." Id.; see also § 301.560.1(3) (same). In short, "[t]he bond ... imposes liability based upon actions taken or not taken by [those] in the operation of the business of motor vehicle dealer." Walker v. W. Sur. Co., 824 S.W.2d 456, 459 (Mo. App. S.D. 1992). The purpose of such bonds is "to [e]nsure compliance by ... a motor vehicle dealer[ ] with state statutes regulating the conduct of motor vehicle dealers." Id. at 460.

## B. Surety's Liability on the Bond

 "If [a] surety is liable [on a motor vehicle dealer bond], that liability must accrue according to the terms of the bond construed in accordance with the statutory provision pursuant to which the bond was given."[3] Id. at 459. "Under Mis-

---

**3.** We agree with both Kansas and Oregon that "a statute requiring motor vehicle dealers to be bonded 'is remedial for the protection of persons injured by a bonded party. It should be liberally construed to accomplish its purpose.' " Nicklin v. Harper, 18 Kan.App.2d 760,

860 P.2d 31, 38 (1993) (quoting Gen. Elec. Credit Corp. v. United Pac. Ins. Co., 80 Or.App. 129, 722 P.2d 15, 18 (1986)). "A consumer who has been aggrieved by the unfair practices of a vehicle dealer likely does not have the financial wherewithal to subsidize a pro-

souri law, a surety's liability for ... damages is co-extensive with the liability of its principal." *Sheffield Assembly of God Church, Inc. v. Am. Ins. Co.*, 870 S.W.2d 926, 932 (Mo. App. W.D. 1994). And "a judgment against the principal, [even when] obtained [by default], absent fraud, collusion, or clerical error in its entry, is conclusive on the sureties." *Home Ins. Co. of New York v. Savage*, 231 Mo.App. 569, 103 S.W.2d 900 (Mo. App. 1937). "One who becomes a surety for the performance of the judgment of a court in a pending case is represented by his principal, and is bound by the judgment against his principal within the limits of his obligation." *Bierce v. Waterhouse*, 219 U.S. 320, 335, 31 S.Ct. 241, 55 L.Ed. 237 (1911).[4]

The judgment Bell obtained against KC Trend Auto was for "common law fraud and violation of the Missouri Merchandising Practices Act." The court specifically found that KC Trend Auto "failed to provide the vehicle title to [Bell] ... and ... obtained money, barter and exchange from ... Bell, by fraud, deception and misrepresentation." Under § 301.562.2(5), "[o]b-

taining or attempting to obtain any money, commission, fee, barter, exchange, or other compensation by fraud, deception, or misrepresentation" is an act constituting grounds for suspension or revocation of a dealer's license.

■■■■■ Under the terms of the bond, Surety was required to "indemnify any person dealing or transacting business with [KC Trend Auto] for any loss sustained by any person by reason of the acts of [KC Trend Auto] provided such acts of [KC Trend Auto] constitute grounds for suspension or revocation of [KC Trend Auto's] license." In other words, Surety was obligated to indemnify Bell for *any* loss she sustained as a result of KC Trend Auto's fraudulent acts. "Compensation for loss is in the form of actual damages." *State ex rel. Webb v. Hartford Cas. Ins. Co.*, 956 S.W.2d 272, 274–75 (Mo. App. W.D. 1997). "Therefore, [Bell] was entitled to recover her actual damages (losses) sustained as a natural, necessary, and logical consequence of [KC Trend Auto's] fraudu-

tracted litigation to recover payment under the Act after previously litigating his or her rights to payment in another legal proceeding." *True Heart Corp. v. River City Auto Sales, Inc.*, 32 Kan.App.2d 237, 82 P.3d 519, 523 (2003).

4. *See also State ex rel. Christy v. Donegan*, 12 Mo.App. 190, 200 (1882), *aff'd*, 83 Mo. 374 (1884) (holding that, "whenever a person has contracted in reference to the conduct of one of the parties in a proceeding in court, he is concluded by the judgment; and a judgment against a defendant is conclusive upon his bail, if free from fraud and collusion; and they cannot show that it is for too great a sum, nor that it was obtained by the negligence of the principal. Judgments are binding on parties and privies, and bail are privies."); *Peters v. Equitable Surety Co.*, 273 Mo. 318, 202 S.W. 530, 533 (Mo. 1918) (holding that a "surety in signing an appeal bond voluntarily places himself in privity with the principal, and in the absence of fraud is concluded by

any judgment following. He submits to the management of the case by his principal. He cannot question the merits of a judgment nor allege that it would not have been rendered but for the fault or negligence of the principal." (internal quotations omitted)).

In its second point, Surety faults the trial court for referring to the bond as a "judgment bond," much like an appeal bond. But this court has already noted that, "[c]onsidering the language of § 301.560.1(4), it is significant that the triggering event for payment of the proceeds of the bond is the receipt of a final judgment. The requirement of a final judgment before payment of the bond evidences the legislature's intent that the court look to the basis for the judgment in determining whether an aggrieved party is entitled to indemnification." *Western Sur. Co. v. Intrust Bank, N.A.*, 20 S.W.3d 566, 570 (Mo. App. W.D. 2000). We see no error in the court's reference to the motor vehicle dealer bond as a "judgment bond."

lent [acts]." *Id.* at 275. There is nothing in the record to support—and Surety does not argue—that the actual damages awarded to Bell by the trial court were anything but "natural, necessary, and logical consequence[s]" of KC Trend Auto's fraudulent acts. Accordingly, the court committed no error in holding Surety liable for the full amount of the bond.

In its first point, Surety argues that the trial court erred in holding it "strictly liable" for Bell's damages up to the full amount of the bond because, it argues, case law permits a surety the right to investigate a judgment before paying to ensure that only covered losses are paid. In its third and fourth claims, Surety argues that investigation reveals that damages awarded to Bell for emotional distress and loss of use were not covered by the bond. There are multiple flaws in these claims.

 First, the court below did not hold Surety "strictly liable." Strict liability is a tort concept; "the imposition of strict liability is usually a policy decision involving the allocation of risks and costs—assessing who is best suited to absorb the loss regardless of moral fault." Stacey Dansky, *Eliminating Strict Employer Liability in Quid Pro Quo Sexual Harassment Cases*, 76 Tex. L. Rev. 435, 458 (1997). But "when commercial parties of equal bargaining power enter into a contract which ... expressly allocates the risk ..., the policy behind strict liability does not apply." *Sharp Bros. Contracting Co. v. Am. Hoist & Derrick Co.*, 703 S.W.2d 901, 903 (Mo. banc 1986) (Welliver, J., concurring). Instead, "the contract ... governs the allocation of risk." *Id.*

Here, the trial court's judgment was based upon the terms of the bond—a document entered into by two commercial parties: (1) KC Trend Auto and (2) Surety. The court found that, under the facts presented, Surety was required, by the terms of the bond, to pay. That finding was based upon the language of the bond and its governing statutes. It had nothing to do with tort law whatsoever. Thus, Surety's characterization of the judgment against it as imposing "strict liability" is simply inaccurate.

 Second, Surety is bound by the judgment Bell obtained against KC Trend Auto; thus, contrary to the arguments in its third and fourth points, it does not get to relitigate the damages awarded. "[I]ssues made and decided against the principal in the bond upon which the sureties were bound ... cannot be relitigated, in the absence of fraud and collusion, by a surety when sued upon the bond." *Bierce*, 219 U.S. at 335, 31 S.Ct. 241.[5] Both the terms of the bond itself and the language of § 301.560.1(3) mandate that Bell was entitled to recover for "any loss" resulting from KC Trend Auto's fraudulent acts. Nothing in either the bond language or § 301.560.1(3) exempt damages for resulting emotional distress or loss of use.

Surety does not contend that damages awarded to Bell for either emotional distress or loss of use are somehow unrelated to KC Trend Auto's fraudulent acts or that the judgment for damages was obtained by either fraud or collusion. Contrary to the multiple authorities cited above, Surety believes it has the right to relitigate these issues based upon this court's decision in *Marcomb v. Hartford Fire Ins. Co.*, 934

5. According to the terms of the bond contract, KC Trend Auto "committed ... to hold Western Surety Company harmless from all loss, cost, and expense of whatsoever kind or nature by reason of executing the Bond." Thus, it appears that Surety has the option of seeking indemnity from KC Trend Auto as a result of Surety being required to pay on the bond.

S.W.2d 17 (Mo. App. W.D. 1996). We disagree.

In *Marcomb*, "agents for a Kansas City car dealer wrongfully repossessed Frank A. Marcomb's car, [and] they added injury to insult by hitting him with the car." *Id.* at 17. Marcomb had purchased the car from Cars 4 Less, but, despite Marcomb having made $1150 in payments for the vehicle, the dealer had the car repossessed and sold it to a third party. *Id.* at 18. Marcomb sued the dealer and obtained a default judgment, awarding $40,000 in actual damages, $10,382.05 in attorneys' fees, $800.01 as costs and expenses, and $60,000 as exemplary damages. *Id.* Hartford (the surety on the dealer's motor vehicle dealer bond) paid out only $1350 to Marcomb (representing the amount of damages related to the dealer's failure to convey title); consequently, Marcomb filed a vexatious refusal to pay action against Hartford. *Id.* Hartford argued that the motor vehicle dealer bond did not cover all of Marcomb's losses and that it had already paid the losses covered. *Id.* This court agreed.

We held that the bond covered only those losses resulting from the dealer's failure to convey title to Marcomb, as that was the only act constituting a ground for the suspension or revocation of the dealer's license. *Id.* at 18–19. The repossession agents' act of hitting Marcomb with the car and causing physical injury was not an act constituting a ground for suspension or revocation of the dealer's license; thus, any damages from that act were not covered by the bond. *Id.* at 19.

Surety's argument conflates the *acts covered by the bond* with the *damages flowing from the acts*. While damages from acts that do *not* constitute a ground for suspension or revocation of a dealer's license (like assault and battery) are *not* covered by a motor vehicle dealer bond, "*any* loss sustained by reason of the acts of the person bonded when such acts constitute grounds for the suspension or revocation of the dealer's license" *is* covered by the bond. § 301.560.1(3) (emphasis added). Unlike in *Marcomb*, all of Bell's damages arose from acts covered by the bond. Thus, Surety was required to pay for all of them, up to the amount of the bond.

Surety's points on appeal are denied.

### Conclusion

Because Bell obtained a judgment against Surety's principal based upon acts constituting grounds for suspension or revocation of the principal's motor vehicle dealer license, Surety was required under the terms of both the bond and § 301.560.1(3) to indemnify Bell's actual damages up to the amount of the bond. The trial court's judgment is affirmed.

Thomas H. Newton, Presiding Judge, and James Edward Welsh, Judge, concur.