(865 P.2d 1031)
No. 68,795

JOE MASTERSON, *Appellant*, v. BOLIDEN-ALLIS, INC., *Appellee*.

Opin-
ion filed September 10, 1993.

*Pamela G. Phalen* and *Fred Spigarelli*, of Spigarelli, McLane & Short, of Pittsburg, for appellant.

*John I. O'Connor*, of The Law Firm of John I. O'Connor, of Pittsburg, for appellee.

Before GERNON, P.J., GREEN, J., and CARLOS MURGUIA, District Judge, assigned.

GREEN, J.: This is a suit by plaintiff, Joe Masterson, for breach of an implied contract of employment. Plaintiff appeals the trial court's order reducing his award by subtracting unemployment, Social Security, and pension benefits he received during the pe-

riod following his discharge. Defendant, Boliden-Allis, Inc., cross-appeals, claiming there was insufficient evidence for the jury to find an implied contract of employment existed between it and plaintiff.

Plaintiff was discharged from his employment with defendant in October 1990. In April 1991, plaintiff sued defendant for breach of an implied contract of employment.

Plaintiff convinced the jury that an implied contract of employment existed between him and defendant. The jury also determined that defendant breached the implied contract of employment when it improperly discharged plaintiff. Before trial, both parties stipulated to the amount of damages sustained by plaintiff. In addition, the parties stipulated to the total amount of pension, unemployment, and Social Security benefits received by plaintiff following his discharge. After the trial, the trial court reduced plaintiff's damage award by the total amount of unemployment, pension, and Social Security benefits he received following his discharge.

Because plaintiff was an employee-at-will, defendant argues there was insufficient evidence for the jury to find an implied contract of employment existed between it and plaintiff.

"[W]hen a verdict is challenged for insufficiency of evidence or as being contrary to the evidence, an [appellate court] does not weigh the evidence or pass on the credibility of the witnesses." *Brown v. United Methodist Homes for the Aged*, 249 Kan. 124, 127, 815 P.2d 72 (1991). "If the evidence, with all reasonable inferences to be drawn therefrom, when considered in the light most favorable to the prevailing party, supports the verdict, it will not be disturbed on appeal." *Wisker v. Hart*, 244 Kan. 36, 37, 766 P.2d 168 (1988).

There are several exceptions to the employment-at-will doctrine. One exception is the "implied contract" theory adopted by the Kansas Supreme Court in *Morriss v. Coleman Co.*, 241 Kan. 501, 509, 738 P.2d 841 (1987). The plaintiffs, two fellow employees of the opposite sex, were discharged by a supervisor when he learned they had been taking overnight trips together. Even though the plaintiffs had not received a copy of the company's supervisor's manual, they contended that statements contained in the manual established an implied contract that allowed employ-

ees to be discharged only for "good cause." Furthermore, the employees contended their discharge breached this contract. The Supreme Court held that determining whether an implied contract exists requires a factual inquiry.

In *Morriss*, the Supreme Court states that under an implied contract theory, the employment contract is interpreted more broadly. It recognizes an implied obligation on the part of the employer not to terminate an employee arbitrarily where a policy or program of the employer, either express or implied, restricts the employer's right of termination at will. Hence, employee manual guidelines for discharge are viewed as part of the employment contract and bar the employer from violating its own policies in discharging an employee. 241 Kan. at 509.

Defendant argues that because plaintiff did not receive a copy of its written personnel policy manual describing the company's progressive disciplinary and discharge procedures, the manual cannot form the basis of an implied contract of employment. We disagree. In *Morriss*, the plaintiffs did not receive a copy of the supervisor's manual either. In our case, plaintiff testified he worked for defendant for 46 years before his discharge. Like in *Morriss*, plaintiff testified defendant's practices and procedures caused him to believe he could not be fired without cause. The plant superintendent also testified it was defendant's policy not to fire an employee without a reason. Neither defendant's general manager/vice-president nor the plant superintendent could recall discharging an employee without a reason. A jury could reasonably infer that the defendant's policy regarding its discharge procedure was communicated to its employees through its practices and procedures. At the time the personnel policy manual was distributed, defendant intended for all salaried employees to receive a copy. The fact plaintiff never received a widely distributed personnel manual should not preclude him from using the manual as evidence of defendant's actual discipline and discharge policy.

Defendant next argues the clauses in the personnel policy manual disclaiming any intention to create anything other than an employment-at-will relationship precluded plaintiff from claiming there was an implied contract of employment. In *Morriss*, the Supreme Court also considered the issue of a disclaimer contained in the policy manual. The court held that the disclaimer was

ineffective for two reasons: (1) The disclaimer was not brought to the plaintiffs' personal attention, and (2) the supervisor's manual was not the sole basis on which an implied contract was asserted. For instance, plaintiffs also relied on statements made by their supervisors. 241 Kan. at 514.

In our case, the record is unclear if the disclaimer was ever brought to plaintiff's personal attention. Furthermore, plaintiff is not basing his implied contract claim solely on the policy manual. In addition to the policy manual, plaintiff claims the actions of the plant superintendent caused him to believe it was defendant's policy not to fire employees without reason. Therefore, we conclude defendant's policy manual disclaimer does not preclude plaintiff from claiming there was an implied contract of employment.

After considering the aforementioned testimony and evidence, we find there is substantial competent evidence to support the jury's verdict that an implied contract of employment existed between plaintiff and defendant.

Plaintiff argues on appeal that the trial court erred in reducing the amount of his award for unemployment, Social Security, and pension benefits he received during the period of his discharge.

The proper measure of damages in a breach of employment contract case is the amount of wages the employee would have earned less the amount actually earned or with reasonable diligence could have earned. 249 Kan. at 143. In breach of contract actions, the injured party should be placed in the same position he or she would have been if the contract had not been breached. *Steel v. Eagle*, 207 Kan. 146, 151, 483 P.2d 1063 (1971).

## Unemployment Compensation

We conclude the trial court was correct in reducing the amount of plaintiff's award for the unemployment benefits he received in the amount of $4,810. In the case of unemployment compensation, defendant, not the plaintiff, contributed to the unemployment fund sought to be used as a setoff. See *Dehnart v. Waukesha Brewing Co.*, 21 Wis. 2d 583, 596-97, 124 N.W.2d 664 (1963). In *Dehnart*, the Wisconsin Supreme Court allowed an employer to offset unemployment compensation against damages for breach of an employment contract because the employer

would ultimately bear the cost through increased taxes. In addition, like Wisconsin, unemployment benefits paid to Kansas employees are chargeable to the employer's account.

## Social Security and Pension Benefits

Plaintiff's Social Security and pension benefits, however, are clearly distinguishable from the unemployment benefits he received. For instance, plaintiff's Social Security retirement was funded by payroll tax contributions made by both plaintiff and defendant. Likewise, plaintiff's pension plan was funded by contributions made by plaintiff and defendant.

The collateral source rule is generally recognized at common law. The rule is that benefits received by the plaintiff from a source wholly independent of and collateral to the wrongdoer will not diminish the damages otherwise recoverable from the wrongdoer. *Pape v. Kansas Power & Light Co.*, 231 Kan. 441, 446, 647 P.2d 320 (1982). The Kansas Supreme Court has ruled that recent legislative attempts to limit application of the common-law rule in tort cases violate both the Kansas and United States Constitutions. See *Thompson v. K.F.B. Ins. Co.*, 252 Kan. 1010, Syl. ¶¶ 5, 6, 850 P.2d 773 (1993); K.S.A. 1992 Supp. 60-3801 *et seq.* Defendant argues the collateral source rule is generally not applicable in breach of contract cases and urges this court not to inject tort theories of recovery into a contract case.

Kansas courts, however, have applied a collateral source analysis in breach of contract cases. See *Mahoney, Inc. v. Galokee Corporation*, 214 Kan. 754, 761-62, 522 P.2d 428 (1974); *Broce-O'Dell Concrete Products, Inc. v. Mel Jarvis Constr. Co.*, 6 Kan. App. 2d 757, 761-62, 634 P.2d 1142 (1981). Courts in other jurisdictions have been particularly willing to apply the rule in breach of employment contract cases. Fleming, *The Collateral Source Rule and Contract Damages*, 71 Cal. L. Rev. 56, 79-81 (1983).

Based on the facts of this case, we find no discernible difference between Social Security benefits and pension benefits plaintiff received. Both are regarded as a collateral source. See *Maxfield v. Sinclair Intern.*, 766 F.2d 788 (1985) (employee's Social Security benefits could not be set off against damages); *McDowell*

*v. Avtex Fibers, Inc.*, 740 F.2d 214 (1984) (employee's pension plan benefits could not be deducted from back pay award).

We conclude that the court was incorrect in reducing the amount of plaintiff's award for the Social Security benefits he received in the amount of $6,405 and for pension benefits he received in the amount of $4,767. Therefore, we reverse the trial court's judgment reducing plaintiff's award by the aforementioned amounts and direct the trial court to restore plaintiff's award by $11,172.

Defendant also argues the trial court erred by excluding three jurors, who were business owners, for cause.

Rulings on the qualifications of jurors will not be disturbed absent a showing of abuse of discretion. *In re Estate of Minney*, 216 Kan. 178, 183-84, 531 P.2d 52 (1975). See K.S.A. 60-247. Defendant's claim that certain jurors were excused because of their economic status is not supported by the record. The three jurors essentially admitted they could not render a fair and impartial verdict in the case. Reasonable people could agree with the trial court's decision to excuse those jurors for cause. This court need not address the constitutional issues raised by defendant.

Defendant next contends plaintiff was terminated for good cause. Good cause has been defined in teacher dismissal or contract nonrenewal cases as any ground which is put forward in good faith and which is not arbitrary, irrational, unreasonable, or irrelevant. *Gillett v. U.S.D. No. 276*, 227 Kan. 71, 78, 605 P.2d 105 (1980). This definition was used to instruct the jury in this case.

Defendant alleges it discharged plaintiff for informing another employee of a pending layoff before the layoff was announced. Defendant further claims plaintiff breached a duty of confidentiality. Plaintiff claims he did not inform anyone of a layoff. He testified that after he learned of the pending layoff, he discussed with another employee whether that employee might wish to take some vacation time.

Four employees of defendant, including plaintiff, testified it was company practice to request employees to take vacations when insufficient work existed, in order to avoid layoffs. Plaintiff testified that when he knew there would be a layoff, and one of

his workers asked him about it, he would deny it "over and over." He also testified employees would sometimes already know the answer when they asked him, and when he denied there was going to be a layoff, they would not believe him. He further testified that as a union member, before becoming a foreman, he knew about pending layoffs before the foremen did. He also testified the workers knew that if the work was slow, a layoff was possible. He also testified he had been a foreman for 25 years and whenever he learned of a pending layoff, he would survey the workers regarding their vacation time. The employee, James Giordano, who plaintiff allegedly told of the layoff, denied plaintiff told him there was going to be a layoff.

There was also testimony that Giordano learned of a layoff from plaintiff and learned the names of the workers who were going to be laid off from plaintiff. Our scope of review, however, prevents us from reweighing the evidence or determining the credibility of the witnesses. Nevertheless, there was substantial competent evidence for the jury to infer that plaintiff never informed Giordano of a pending layoff and that plaintiff, by surveying the employees regarding their vacation time, was following a 25-year-old practice as a foreman. Therefore, in light of the progressive disciplinary procedure outlined in the personnel policy manual, defendant did not have good cause to discharge plaintiff for this alleged one-time occurrence.

Finally, defendant claims the trial court erred by allowing the testimony of Steven Snider. Defendant claims it objected to the testimony of Steven Snider. We, however, have not found its objection in the record or the basis for the objection. Defendant also claims that Snider was not a witness listed in the pretrial order. On the contrary, the only pretrial order in the record showed that Snider would be a witness.

Defendant claims that Snider's testimony was irrelevant and prejudicial. Snider testified that defendant's planned layoffs were not always confidential and that it was common practice to ask employees with vacation time to take a vacation in order to forestall a layoff. Because Snider worked in a different division than plaintiff, defendant apparently feels his testimony regarding layoff procedures is irrelevant.

K.S.A. 60-407(f) provides that all relevant evidence is admissible. K.S.A. 60-401(b) defines relevant evidence as evidence having any tendency in reason to prove any material fact. Snider testified defendant's management did not consider all layoffs confidential prior to formal announcement. Defendant's confidentiality policy regarding layoffs was a material issue at trial. The fact that Snider worked in a different division than plaintiff affected the weight of his testimony, not the relevancy. Reasonable people could agree with the trial court's decision to allow Snider to testify. Defendant has not shown the trial court abused its discretion by allowing Snider to testify. See *In re Estate of Kreie*, 235 Kan. 143, 149, 679 P.2d 712 (1984); K.S.A. 60-407(f); K.S.A. 60-445.

Affirmed in part, reversed in part, and remanded for recalculation of damages.