(82 P.3d 519)

No. 90,237

TRUE HEART CORPORATION, *Plaintiff/Appellant*, v. RIVER CITY AUTO SALES, INC., *Defendant/Appellee*, and OLD REPUBLIC SURETY COMPANY, *Garnishee/Appellee*.

Opinion filed December 24, 2003.

*Gail A. Jensen*, of El Dorado, for appellant.

*David A. Schatz* and *Sean P. Hamer*, of Levy and Craig, of Kansas City, Missouri, for garnishee/appellee Old Republic Surety Company.

No appearance for appellee River City Auto Sales, Inc.

Before RULON, C.J., GREEN, J., and STEPHEN D. HILL, District Judge, assigned.

RULON, C.J.: Plaintiff True Heart Corporation appeals the district court's order to quash its request for a nonwage garnishment against the defendant, River City Auto Sales, Inc., and its surety, Old Republic Surety Co. The plaintiff contends the district court improperly denied recovery under the bond and that the district court committed error in refusing to award attorney fees. We affirm.

The facts of this case are essentially undisputed. In November 1995, the plaintiff and the defendant entered a business relationship in which the plaintiff would purchase used automobiles and turn them over to the defendant. The defendant would then repair, refurbish, and restore the vehicles and sell them on its lot. The net proceeds would be divided between the plaintiff and the defendant pursuant to the agreement.

In November 1997, the plaintiff filed a suit for breach of contract, alleging that the defendant had failed to properly remit payment for the sale of vehicles and owed the plaintiff $27,000. After a trial, the district court found the defendant had breached its

agreement for payment of the proceeds of the vehicle sales and entered judgment in the amount of $19,905.

On February 13, 2002, the Director of Vehicles issued a letter decision, finding that the defendant had committed a violation of the Licensure of Vehicle Sales and Manufacture Act (Act), K.S.A. 8-2401 *et seq.*, which entitled the plaintiff to payment of the vehicle bond provided under K.S.A. 8-2404(i). The defendant's surety, Old Republic Surety, filed a letter requesting a reconsideration of the Director's disposition of the bond, which the Director refused.

Thereafter, the plaintiff sought enforcement of the bond payment through a non-wage garnishment action against the surety. In response, the surety moved to quash the garnishment action.

After a hearing, the district court granted the surety's motion to quash, finding that a breach of contract did not constitute a violation of the Act. As a result, the district court determined that the plaintiff was not entitled to recover the bond proceeds under K.S.A. 8-2404(i).

## The Alleged Violation

This case primarily involves the interpretation of K.S.A. 8-2404(i). Interpretation of a statute is a question of law over which an appellate court has unlimited review. The court's primary role in interpreting a statute is to effect the legislature's intent. If the language of a statute is plain and unambiguous, the court must give effect to the expressed intent rather than impose the court's determination of what the law should be. Where a statute is ambiguous, however, the court may consider the historical background of the legislation, the circumstances prompting its passage, the purpose to be accomplished, and the ultimate effect of the constructions presented by the parties. See *Hartford Cas. Ins. Co. v. Credit Union 1 of Kansas*, 268 Kan. 121, 124-25, 992 P.2d 800 (1999).

In pertinent part, K.S.A. 8-2404(i) provides:

"Every applicant or licensee who is or applies to be a used vehicle dealer or a new vehicle dealer shall furnish and maintain a bond in such form, amount and with such sureties as the director approves, conditioned upon the applicant or licensee complying with the provisions of the statutes applicable to the licensee and as indemnity for any loss sustained by a retail or wholesale buyer or seller of a vehicle by reason of any act by the licensee in violation of any act which con-

stitutes grounds for suspension or revocation of the license. . . . Upon determination by the director that a judgment from a Kansas court of competent jurisdiction is a final judgment and that the judgment resulted from an act in violation of this act or would constitute grounds for suspension, revocation, refusal to renew a license or administrative fine pursuant to K.S.A. 8-2411, and amendments thereto, the proceeds of the bond on deposit or in lieu of bond provided by subsection (j), shall be paid. The determination by the director under this subsection is hereby specifically exempted from the Kansas administrative procedure act (K.S.A. 77-501 through 77-549, and amendments thereto,) and the act for judicial review and civil enforcement of agency actions (K.S.A. 77-601 through 77-627, and amendments thereto). Any proceeding to enforce payment against a surety following a determination by the director shall be prosecuted by the judgment creditor named in the final judgment sought to be enforced. Upon a finding by the court in such enforcement proceeding that a surety has wrongfully failed or refused to pay, the court shall award reasonable attorney fees to the judgment creditor."

As a preliminary matter, the plaintiff contends the district court committed reversible error by reviewing the decision of the Director of Vehicles that the defendant had violated the Licensure Act.

In support of the plaintiff's claim, K.S.A. 8-2404(i) provides that the procedure for obtaining payment of the bond is initiated by the Director's determination that the judgment entered against the licensee, in this case the defendant, was the result of a violation of the Act; in other words, the licensee's conduct which provided the basis for a civil judgment provided grounds for suspension, revocation of a license, refusal to renew a license, or the imposition of an administrative fine under the Act.

K.S.A. 8-2404(i) further provides that payment of the bond proceeds is due upon the Director's determination and this determination is exempt from review under the Kansas Administrative Procedure Act (KAPA), K.S.A. 77-501 *et seq.*, or the Kansas Act for Judicial Review and Civil Enforcement of Agency Actions (KJRA), K.S.A. 77-601 *et seq.*

Accordingly, the plaintiff argues that the Director is the final authority in determining payment of the bond and that the statute provides no procedure by which a court can review the Director's determination. In essence, the plaintiff contends that because the

decision is exempt from review under the KAPA or the KJRA, the Director's determination is not reviewable.

However, the Director's determination is only the first step of the process. That determination creates the surety's obligation to pay for the defendant's malfeasance, but the statute clearly provides protection for the surety in the form of judicial oversight. If a surety refuses to pay the bond after the Director has determined that payment is due, the aggrieved party's recourse is a suit to enforce the judgment in his or her own name. K.S.A. 8-2404(i). The district court must award attorney fees to the aggrieved party if it determines that the surety wrongfully failed or refused to pay. K.S.A. 8-2404(i).

Implicit in the statutory award of attorney fees is the logical corollary that if the district court finds that the surety properly refused payment, attorney fees are not warranted. A determination that a surety properly refused payment necessarily requires judicial review of the Director's determination that payment by the surety is required under the Act.

This court should construe statutory provisions in harmony whenever possible. See *CPI Qualified Plan Consultants, Inc. v. Kansas Dept. of Human Resources*, 272 Kan. 1288, 1293, 38 P.3d 666 (2002). Clearly, by exempting the Director's determination from the KAPA and the KJRA, the legislature intended to permit an aggrieved party under the Act to present a claim for immediate payment upon the Director's determination that payment was due without being required to wait while the surety exhausted its administrative appeals before entering the judicial system. However, just as clearly, the legislature did not intend to subject sureties to possible arbitrary and capricious decisions of the Director without a means of legal recourse. Rather, the legislature chose to exempt the Director's decision from administrative review so that an aggrieved party could immediately seek judicial enforcement of his or her claim against the surety.

This interpretation is consistent with due process concerns, as well as with one of the primary goals of the Act as stated in *Hartford Cas. Ins.*, 268 Kan. at 128: "[T]he primary focus of the Act appears to be the protection of the consumers who purchased vehicles from

dealers." See K.S.A. 8-2402. A consumer who has been aggrieved by the unfair practices of a vehicle dealer likely does not have the financial wherewithal to subsidize a protracted litigation to recover payment under the Act after previously litigating his or her rights to payment in another legal proceeding.

Consequently, nothing in the statute prohibits a district court from reviewing the Director's decision that the previous judgment had been caused by the licensee's violation of the Act for purposes of determining the surety's obligation to pay under the bond agreement.

The district court found the original cause of action was based exclusively upon a claim for breach of contract and the judgment did not result from a violation of the Act. Where, as here, the controlling facts are based upon written or documentary evidence by way of pleadings, admissions, depositions, and stipulations, an appellate court is not obligated to give the district court's findings deference but possesses unlimited review to establish a legal conclusion from the facts presented. See *Heiman v. Parrish*, 262 Kan. 926, 927, 942 P.2d 631 (1997).

The original determination of the Director of Vehicle's office concerning the defendant's violation did not cite to a specific statute, regulation, rule, or order that had been violated. In responding to the defendant's request for reconsideration, the Director's office responded:

"The information supplied to our Department reflects that the Defendant, River City Auto Sales sold vehicles without remitting the proceeds as agreed to by the parties. It further shows that a court of competent jurisdiction rendered decision in favor of the plaintiff, True Heart Corporation. The judgment creditor, True Heart Corporation conducted business with the dealer, and as a result suffered a loss. This loss is directly related to the dealer selling vehicles in violation of an agreement to remit and divide the proceeds with True Heart Corporation. Therefore, the original determination stands."

In *Hartford Cas. Ins.*, our Supreme Court reviewed the Director's determination that Daniel E. Sanchez, d/b/a Midwest Motor Sport, had violated the Act by fraudulently failing to pay Credit Union 1 under the floor plan financing agreement. The *Hartford* court noted the Director had not indicated the provision upon

which it had based the finding of a violation of the Act, yet the *Hartford* court affirmed the district court's decision that Sanchez had violated K.S.A. 1998 Supp. 8-2410(a)(12) and additionally determined that Sanchez had violated 8-2410(a)(8). 268 Kan. at 126.

The surety/garnishee in this case argues that *Hartford Cas. Ins.* is inapplicable because there is no evidence of fraud in this case. However, our Supreme Court identified two violations of the Act enumerated in K.S.A. 8-2410(a), only one of which involved fraud. See 268 Kan. at 126. K.S.A. 8-2410(a)(12) only requires a finding that the dealer "knowingly violat[ed] any law relating to the sale, distribution or financing of vehicles." Finding a violation under this subsection does not require evidence that the dealer had engaged in fraud.

Just as Sanchez' breach of the financing agreement with Credit Union 1 constituted a violation of the Act under K.S.A. 8-2410(a)(12), the breach of the agreement in this case, wherein the defendant would remit a portion of the proceeds from the sale of a vehicle to the plaintiff, could validly support the Director's determination that the defendant had violated the Act.

Consequently, the district court's finding that the judgment proceeding from the defendant's breach of contract was not the result of a violation of one of the enumerated provisions within K.S.A. 8-2410(a) is erroneous, based upon the reasoning of our Supreme Court in *Hartford Cas. Ins.*

## Protected Class

As an alternative basis for affirming the district court's decision, the surety contends the plaintiff is not a party the Act is designed to protect. The surety contends that statutory amendments to K.S.A. 8-2404(i) in 2001 effectively eliminated the plaintiff's ability to seek compensation from the bond required by statute.

The support for this argument lies within the 2001 amendments to K.S.A. 8-2404(i). In 1999, our Supreme Court decided *Hartford Cas. Ins.*, which interpreted "any person", see K.S.A. 8-2401(u), within the meaning of K.S.A. 1998 Supp. 8-2404(i) to include companies which financed automobile retail dealerships. 268 Kan. at 126-27. This interpretation enabled creditors of dealerships which

had committed some violation of the Act, such as a breach of the financing agreement, to enforce payment of a judgment from the bond secured by the dealership's surety.

However in the 2001 legislative session, Jeff Bottenberg, of Western Surety Company, urged the House Insurance Committee to introduce an amendment to K.S.A. 8-2404(i) which would change "any person" to "a consumer." Part of the motivation for seeking the amendment was to reserve the bond proceeds to consumers who are injured by improper business practices of vehicle dealers. See Minutes, House Comm. on Insurance, January 25, 2001 (H.B. 2114).

The House Committee on Insurance adopted the amendments advocated by Jeff Bottenberg, restricting the application of K.S.A. 8-2404(i) to consumer judgments against vehicle dealers. The legislature also specifically defined "consumer" as "a natural person who is a retail buyer of a motor vehicle." However, before the proposed amendments passed out of the committee, Bottenberg proposed another amendment, eliminating "a consumer" both from K.S.A. 8-2404(i) and from the definitions section of the Act, K.S.A. 8-2401. In place of "a consumer," Bottenberg suggested "a retail or wholesale buyer of a vehicle." This proposed amendment was adopted without any recorded discussion of the reason for the amendment. See Minutes, House Comm. on Insurance, February 8, 2001 (H.B. 2114).

Ultimately, the bill passed, as amended, out of committee. When the bill was assigned to the Senate Transportation Committee, Bottenberg again proposed an amendment to the bill to add "seller," stating that the omission of the word was an oversight in the proposal before the house. In advocating the proposed amendment to include both sellers and buyers, Dan Carlson of Carlson Auction Service testified that excluding sellers from protection under the Act would leave a significant aspect of consumer vehicle transactions, namely trade-ins, unprotected. The amendment was also supported by Jack Adolph of the Kansas Independent Automobile Dealers Association, Don McNeely of the Kansas Automobile Dealers Association, and Sheila Walker, the Director of Vehicles. The proposed amendments were adopted and passed out of the

committee. See Minutes, Senate Comm. on Transportation, March 7, 2001 (H.B. 2114). The bill, as amended, was ultimately enacted by the legislature as K.S.A. 8-2404. See L. 2001, ch. 138, sec. 1, effective January 1, 2002.

By amending the statute, the legislature clearly perceived the need to restrict the application of K.S.A. 8-2404(i). In opposition to the surety's contention, however, the legislature rejected a definition which would confine bond proceeds exclusively to consumers who were injured by dealership practices. By adopting the "retail or wholesale buyer or seller" language, the legislature clearly intended to include some business entities within the protection of the Act.

Although "wholesale" and "retail" are not specifically defined by statute, K.S.A. 8-2401(p) defines "wholesaler" as "any person who purchases vehicles for the purpose of resale to a vehicle dealer." This definition comports with the ordinary definition of "wholesale." See Webster's II New Riverside University Dictionary 1317 (1988). Unless a word is given a specific definition, this court is to define it according to its ordinary meaning. See *GT, Kansas, L.L.C. v. Riley County Register of Deeds*, 271 Kan. 311, 316, 22 P.3d 600 (2001).

Clearly, the plaintiff was in the business of purchasing automobiles for resale and might be considered a wholesale buyer within the meaning of the statute. However, the statute clearly uses the terms "retail or wholesale buyer or seller" in relation to the dealership that had committed a violation of the Act resulting in the plaintiff's ability to obtain a civil judgment against the dealership. See K.S.A. 8-2404(i) ("Every applicant or licensee . . . shall furnish and maintain a bond . . . as indemnity for any loss sustained by a retail or wholesale buyer or seller of a vehicle by reason of any act by the licensee in violation of any act which constitutes grounds for suspension or revocation of the license.").

While the plaintiff's business may generally be the wholesale purchase of vehicles for resale, the plaintiff's relationship to the defendant is not one of a wholesale buyer. Under the agreement between the parties, the plaintiff "would purchase used automobiles and together with the defendant, would repair, refurbish, de-

tail and/or restore vehicles and prepare them for resale." The vehicles would then be sold from the defendant's lot.

Although a copy of the agreement between the parties or detailed testimony concerning the agreement would be helpful in ascertaining the exact nature of the parties' relationship, the available facts demonstrate that the relationship of the plaintiff to the defendant was not one of a wholesale purchaser or seller of automobiles. The parties operated a shared business operation, merely splitting the tasks involved.

From the minimal record presented before this court, we understand the plaintiff would employ a certain degree of discretion to select used vehicles for resale. Plaintiff would then turn those vehicles over to the defendant, who would repair, refurbish, and restore the vehicles as needed before reselling them. The defendant would then share an established percentage of net proceeds from the sale of the car, minus a "lot fee."

Because the relationship between the plaintiff and the defendant is not one of a wholesale buyer or seller, the bond protection provided by the Act is not available to the plaintiff. Consequently, the district court properly dismissed the plaintiff's action to enforce payment of the bond under K.S.A. 8-2404(i).

## Attorney Fees

Finally, the plaintiff contends the district court improperly denied its request for attorney fees under the Act. K.S.A. 8-2404(i) provides, in pertinent part: "Upon a finding by the court in such enforcement proceedings that a surety has wrongfully failed or refused to pay, the court shall award reasonable attorney fees to the judgment creditor."

According to our Supreme Court, when an action to enforce payment under the bond created by the Act is successful, the district court must award reasonable attorney fees applicable to the enforcement action. *Hartford Cas. Ins., Co. v. Credit Union 1 of Kansas,* 268 Kan. 121, 132-33, 992 P.2d 800 (1999). The court analogized the language of 8-2404(i) to the wrongful refusal of an insurance carrier's duty to defend. In such cases, as in this one, however, attorney fees are only proper where the refusal to defend,

or, in this case, the refusal to pay the proceeds of the bond, was wrongful. See *American States Ins. Co. v. Hartford Accident & Indemnity Co.*, 218 Kan. 563, 575, 545 P.2d 399 (1976).

Because the district court's finding that the plaintiff was not entitled to payment under the bond was proper, although for different reasons than those articulated here, the defendant's surety did not wrongfully refuse payment and attorney fees were properly denied.

Affirmed.