**WELLS FARGO BANK TEXAS, N.A., Trustee of the Eleanor Pierce Stevens Irrevocable Gift Trust, Plaintiff,**

v.

**FOULSTON SIEFKIN LLP and Harvey R. Sorensen, Defendants and Counter–Plaintiffs.**

**No. Civ.A. 302CV0139L.**

United States District Court,
N.D. Texas,
Dallas Division.

Dec. 17, 2004.

---

Jeffrey E. Cook, Shannon L. K. Welch, Sullivan Parker & Cook, T. Wesley Holmes, James A. Fisher, Fisher Holmes & Turner, Dallas, TX, for Plaintiff.

Ernest E. Figari, Jr., Dennis M. Lynch, Melissa A. Mitchell, Figari & Davenport, Dallas, TX, for Defendants.

## ORDER

LINDSAY, District Judge.

Before the court are the Motion of Defendants and Counter–Plaintiffs Harvey R. Sorensen and Foulston Siefkin LLP for Partial Summary Judgment, filed May 19, 2004; Plaintiff's Motion for Summary Judgment, filed June 7, 2004; and Objections of Defendants and Counter–Plaintiffs Harvey R. Sorensen and Foulston Siefkin LLP to Plaintiff's Supplemental Appendix, filed July 22, 2004. After careful consideration of the motions, responses, replies, competent summary judgment evidence, record and applicable law, the court **grants** the Motion of Defendants and Counter–Plaintiffs Harvey R. Sorensen and Foulston Siefkin LLP for Partial Summary Judgment; **grants in part** and **denies in part** Plaintiff's Motion for Summary Judgment; and **denies as moot** Objections of Defendants and Counter–Plaintiffs Harvey R. Sorensen and Foulston Siefkin LLP to Plaintiff's Supplemental Appendix.

## I. *Factual and Procedural Background*

Plaintiff Wells Fargo Bank, Texas, N.A. ("Wells Fargo" or "Plaintiff"), Trustee of the Eleanor Pierce Stevens Irrevocable Gift Trust, filed this action in Dallas County Probate Court on December 21, 2001, against Foulston Siefkin LLP ("Foulston Siefkin") and Harvey R. Sorensen ("Sorensen") (collectively referred to as "Defendants"). Wells Fargo seeks a declaratory judgment under Tex.Civ. Prac. & Rem. Code § 37.001 et seq. (Vernon 2002) that trust assets not be used to pay litigation fees and expenses related to defending Defendants for alleged misconduct related to the administration of the Eleanor Pierce Stevens Irrevocable Gift Trust ("Trust"). Defendants removed the action to federal court on January 22, 2002, because of diversity of citizenship between the parties and the amount in controversy exceeds $75,000. Defendants filed a counterclaim against Plaintiff alleging breach of contract or violation of Trust, and negligence. Defendants seek a declaratory judgment as to the amount they should recover from Plaintiff and attorney's fees.

Defendants filed a motion for partial summary judgment seeking an interpretation of the Trust provision upon which they rely for their claim of reimbursement. Plaintiff filed a motion for summary judgment seeking, among other things, a declaration that it is not obligated to pay Defendants any amount of money; or, in the alternative, that Defendants' recovery cannot exceed $250,000. The court now sets forth the undisputed facts on which it relies to resolve the motions. In setting forth the facts, the court applies the summary judgment standard as set forth in the following section.

The Trust was created by a written instrument dated April 27, 1989. Sorensen, a licensed attorney in Kansas, is a partner in Foulston Siefkin. He represented Eleanor Stevens ("Stevens") beginning in 1984, and assisted her in preparing and implementing her estate plan. Stevens is the former wife of J. Howard Marshall, II. The corpus of the Trust is and always has been a 10% debenture from Marshall Petroleum, Inc., with a face value of $6,000,000. The Trust, by way of the debenture, provides $50,000 in monthly income. The terms and provisions of the Trust are "construed, interpreted, governed and controlled" by "the laws of the State of Kansas." *See* Defs.'s App. at 21. None of the parties disputes that Kansas law controls. For the first ten years, Stevens was the primary beneficiary under the Trust. Thereafter, Stevens's son, J. Howard Marshall, III ("Marshall III"), became the primary beneficiary, and is now the sole income beneficiary of the Trust. He is entitled to the $6,000,000 debenture that matures on July 1, 2009.

Sorensen served as trustee for the Trust from the date of its creation until he resigned in March of 1996. He was a partner with Foulston Siefkin during his tenure as trustee. In accordance with the terms of the Trust, Sorensen appointed Southwest Guaranty Trust Company as the successor trustee. Through a series of transactions, Wells Fargo became trustee for the Trust in 1999.

In January 1996, prior to Sorensen's resignation as trustee, Marshall III filed suit (*"Marshall* Case") against several defendants, including Sorensen and Foulston Siefkin. Most of Marshall III's claims involved the estate of his deceased father, J. Howard Marshall, II. He alleged that Sorensen and Foulston Siefkin, among the other defendants, conspired to interfere with his inheritance rights. He also made claims involving Stevens's estate plan. He contended that Sorensen and others conspired to mislead Stevens; and that Sorensen, as trustee of the Trust, breached a

fiduciary duty owed to Marshall III, as a beneficiary of the Trust. The suit was filed in probate court in Harris County, Texas. Defendants retained Beck, Redden & Secrest, L.L.P. ("Beck Redden"), a Houston, Texas law firm, to represent them.

On July 1, 1997, Sorensen and Foulston Siefkin filed a motion for summary judgment on all claims pleaded against them. On June 7, 1999, the probate court granted the motion in part. It ordered that Marshall III "take nothing on all claims asserted in this litigation against Harvey Sorensen and Foulston & Siefkin, L.L.P. arising from or related to the Estate of Eleanor Pierce Marshall Stevens, the property of Eleanor Pierce Marshall Stevens, or the estate planning of Eleanor Pierce Marshall Stevens." Pl.App. at 44. The probate court expressly denied the motion for summary judgment as to all claims related to the estate, property or estate planning of J. Howard Marshall, II. The remaining claims were tried beginning in September 2000. The probate court granted a motion in limine prohibiting counsel from asserting that Sorensen or Foulston Siefkin had breached a fiduciary duty to Marshall III. On January 17, 2001, after Marshall III rested his case, the trial court entered a directed verdict for Sorensen and Foulston Siefkin as to Marshall III's remaining claims against them.

The litigation lasted approximately five years, and the actual trial lasted several months. Defendants contend that they incurred approximately $1,500,000 in attorney's fees and expenses defending the litigation.[1] Foulston Siefkin paid Beck Redden, on behalf of Sorensen and itself.

Due to his status as an attorney in Foulston Siefkin, Sorensen was covered by a professional liability insurance policy ("Policy") issued by Attorneys' Liability Assurance Society, Inc. ("ALAS"). Sorensen paid a portion of the premiums for the Policy. ALAS indemnified Sorensen and Foulston Siefkin for all of the Beck Redden fees and expenses in excess of the $250,000 single claim retention amount in the Policy. On April 25, 2001, Defendants requested payment from the Trust for expenses and fees incurred in the *Marshall* Case in the amount of $1,252,780.22. Pl. Response at 1. Wells Fargo denied that any amounts were due and owing.

Wells Fargo filed this lawsuit on December 21, 2001. Defendants filed their answer on January 22, 2002, and subsequently counterclaimed against Wells Fargo on July 31, 2003. Defendants filed a motion for partial summary judgment seeking an interpretation of the Trust provision upon which they rely for their claim of reimbursement. Plaintiff filed a motion for summary judgment seeking, among other things, a declaration that it is not obligated to pay Defendants any amount of money; or, in the alternative, that Defendants' recovery cannot exceed $250,000. The court now considers the motions.

## II. *Summary Judgment Standard*

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

---

1. Defendants maintain that the fees and expenses are generally described as: (1) fees charged by Beck Redden for its legal services; (2) the expenses of Beck Redden in the *Marshall* Case (*e.g.*, photocopying, telephone calls, computer research, etc.); (3) the fees of the Foulston Siefkin attorneys in defending Sorensen; and (4) the expenses incurred by Beck Redden and paid directly by Foulston Siefkin to third-party providers (*e.g.*, expert witnesses, jury consultant, deposition transcripts, etc.). Defs.'s Brief at 6.

Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–25, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir.1998). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986); *Ragas,* 136 F.3d at 458. Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Anderson,* 477 U.S. at 254–55, 106 S.Ct. 2505.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita,* 475 U.S. at 586, 106 S.Ct. 1348. Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir.1996). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir.), *cert. denied,* 513 U.S. 871, 115 S.Ct. 195, 130 L.Ed.2d 127 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his

claim. *Ragas,* 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.; see also Skotak v. Tenneco Resins, Inc.,* 953 F.2d 909, 915–16 & n. 7 (5th Cir.), *cert. denied,* 506 U.S. 832, 113 S.Ct. 98, 121 L.Ed.2d 59 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson,* 477 U.S. at 248, 106 S.Ct. 2505. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex,* 477 U.S. at 322–23, 106 S.Ct. 2548.

## III. *Analysis*

### A. Sorensen and Foulston Siefkin's Motion for Partial Summary Judgment

### 1. Satisfaction of Conditions for Recovery From the Trust

Defendants contend Sorensen has satisfied all conditions for recovery from the Trust. The relevant Trust provision provides:

> In the event that any suit is instituted by any person, whether a beneficiary hereof or otherwise, against Trustee pertaining to or concerning any act of misfeasance, malfeasance, or nonfeasance allegedly committed or neglected by Trustee in the performance of Trustee's duties and powers under this trust indenture, and in the further event that Trustee is adjudicated or is otherwise demonstrated, to the satisfaction of the

court in which such suit is instituted, to be free from liability with respect thereto, then and in such event Trustee shall be entitled to reimbursement out of the trust estate for all reasonable costs and expenses, including attorney's fees, incurred in resisting any such suit.

Defs.'s App. at 19. It is undisputed that Sorensen satisfied three of the four conditions for entitlement for recovery of costs and expenses: (1) a lawsuit was instituted by a beneficiary; (2) the lawsuit concerned actions committed or neglected by a trustee; (3) the trustee was adjudicated to be free from liability to the satisfaction of the court in which such suit is instituted. The parties, however, dispute whether Sorensen is entitled to reimbursement out of the Trust estate for costs and expenses incurred in the *Marshall* Case. Wells Fargo maintains that the expenses and costs of the litigation were paid by Foulston Siefkin because they were obligated to do so, and that Sorensen did not pay anything. They contend, therefore, that the Trust estate should not have to reimburse Sorensen, and that any award to Sorensen would be an unjust windfall. Defendants counter that the clear and unambiguous provision in the Trust only requires that costs and expenses be "incurred" not "paid" or "actually paid." Defs.'s Brief at 11. The court agrees.

### 2. "Incurred" Costs and Expenses

There is no dispute that the terms and provisions of the Trust are controlled and governed by Kansas law. The court, therefore, reviews that state's law for an interpretation of the Trust provision at issue which provides that the "Trustee shall be entitled to reimbursement out of the trust estate for all reasonable costs and expenses, including attorney's fees, incurred in resisting any such suit." Pl.App. at 19. Defendants cite *Hephner v. Traders Ins. Co.*, 254 Kan. 226, 864 P.2d 674

(1993), for the proposition that the Kansas Supreme Court has determined that a party need not actually pay the underlying expenses to receive reimbursement for expenses incurred. Defs.'s Brief at 11–12. One of the issues in *Hephner* was what had to be proved to recover substitution benefits under an automobile insurance policy pursuant to the Kansas Automobile Injury Reparations Act (KAIRA). *Id.* at 674. The court held that to recover substitution benefits under KAIRA, an insured was required to provide proof of a genuine economic loss or *liability for expenses incurred*. *Id.* at 677 (emphasis added). It also held that liability for expenses can be incurred but payment deferred for a period of time. *Id.* at 679. The court further acknowledged that, although the Plaintiff in *Hephner* had not paid her child care provider, she had an obligation to pay him based on the invoices she had received. *Id.* at 680. The court finds the underlying analysis in *Hephner* controlling as to the issue of incurring liability for expenses. Thus, the holding in *Hephner* requires that Sorensen must provide proof of a genuine economic loss or liability for expenses incurred in order to be entitled to reimbursement from the Trust. The court concludes that Sorensen has presented summary judgment evidence (Beck Redden represented Sorensen in the *Marshall* case; and Sorensen was obligated to pay the Beck Redden fees and expenses individually and as a partner of Foulston Siefkin.) that he is liable for the expenses incurred in the *Marshall* Case, and is, therefore, entitled to reimbursement from the Trust.

Wells Fargo contends that *Hephner* is inapplicable to this case because it was decided on the interpretation of a statute and not the meaning of reimbursement. Pl.'s Response at 16. Wells Fargo cites cases from various jurisdictions to support

its interpretation that reading "incur" and "reimbursement" together means a party should be reimbursed for costs that the party has *actually* paid.[2] The court disagrees. The court has found a number of cases from other jurisdictions, including Texas, that clearly hold that incur means to become liable for; and that incurring a liability does not mean that such liability must first be *paid* by the person incurring it before it can be considered to have been "incurred." *See Samsel v. Allstate Ins. Co.*, 204 Ariz. 1, 59 P.3d 281, 284 (2002); *Black v. American Bankers Ins. Co.*, 478 S.W.2d 434, 437 (Tex.1972); *Boise Dev. Co. v. City of Boise*, 26 Idaho 347, 143 P. 531, 534 (1914); *Forth v. Allstate Indem. Co.*, 2004 WL 2804841 (Tex.App.—Texarkana, 2004); *Niles v. American Bankers Ins. Co.*, 229 So.2d 435, 439 (La.App.—1969, writ ref'd); *Rubin v. Empire Mutual Ins. Co.*, 25 N.Y.2d 426, 306 N.Y.S.2d 914, 255 N.E.2d 154, 155 (1969, no writ); *American Indem. Co. v. Olesijuk*, 353 S.W.2d 71, 72 (Tex.Civ.App.—San Antonio 1961, writ dism'd w.o.j.). In *Olesijuk* the court held that:

> The fact that the insured has other arrangements for reimbursement of his expenses does not operate to relieve [the insured] of its obligation as expressed in its contract in plain, certain and unambiguous language. If [the insured] desired to limits its liability to actual loss or damage ultimately suffered by the insured, it could have and should have done so in its policy.

*Olesijuk*, 353 S.W.2d at 73 (citations omitted). In *Samsel* the Arizona Supreme Court reviewed cases from various jurisdictions and stated:

The narrow rule to be extracted from all of these cases is that "incurred" or "actually incurred" language does not bar an insured who became liable for expenses from recovery simply because of the availability of collateral means of discharging his liability therefor so as to have relieved him of the need to pay the charges personally.

*Samsel*, 59 P.3d at 286 (citations and internal quotation marks omitted). Thus, there are a plethora of cases contrary to Wells Fargo position that have held that "incur" is generally accepted to mean to become "liable for," and not "to pay for."

As previously stated, the court must apply Kansas law, notwithstanding the laws of other states and circuits. While *Hephner* is not identical to the case here, it is the most closely analogous case under Kansas law to the issue to be decided by this court. As the court must apply Kansas law, the court simply cannot rely on cases from other jurisdictions that may be more favorable to Plaintiff's position to resolve the summary judgment motion. Reading the provisions of the Trust in harmony with each other, it is clear that to be entitled to reimbursement, Sorensen must have been liable for the expense of the litigation in the *Marshall* Case. Although Foulston Siefkin, a co-defendant in the *Marshall* Case, undertook the actual payment for the attorney's fees and expenses incurred by Sorensen, as a partner of Foulston Siefkin, Sorensen was jointly and severally liable to pay for Beck Redden's legal services and has thus incurred the fees and expenses because he was liable and subject to them.[3] Since Soren-

---

2. *Quick v. N.L.R.B.*, 245 F.3d 231, 256 (3rd Cir.2001); *U.S. v. Upton*, 91 F.3d 677, 682 (5th Cir.1996); *U.S. ex rel Humphrey v. Franklin–Williamson Human Services, Inc.*, 189 F.Supp.2d 862, 871 (S.D.Ill.2002); *Dana Corp. v. Fireman's Fund Ins. Co.*, 169 F.Supp.2d 732, 735–36 (N.D.Ohio 1999); and

*Oliveira v. Pereira*, 414 Mass. 66, 605 N.E.2d 287, 291 (1992).

3. The Kansas general partnership law in effect at the time Beck Redden was retained provided:

sen was jointly and severally liable to pay Beck Redden as a partner in Foulston Siefkin, he incurred a liability for the expenses of the litigation and thus falls within the provision of the Trust that entitles him to reimbursement for all reasonable costs and expenses incurred in the *Marshall* Case. Wells Fargo's argument that awarding Sorensen money from the Trust would be an unjust windfall is unavailing, since the court determines that under the plain and unequivocal terms of the Trust Sorensen incurred liability for the expenses. To hold otherwise would result in a windfall for the wrongdoer, as more fully discussed in section III A(3) below. Accordingly, there is no genuine issue of material fact that Sorensen has incurred costs and expenses for which he is entitled to reimbursement. Sorensen is, therefore, entitled to judgment as a matter of law.

■ Moreover, even if the court did not rely primarily on *Hephner* in reaching its decision, it would reach the same result. This court has done an extensive search on the definition of "incur" and could not find any Kansas cases that specifically define the word "incur" in the context of the matter before the court; and this is so probably because most persons assume that "incur" has its ordinary and common meaning and therefore find no reason to ascribe some other meaning to it. When interpreting words or phrases in a document or statute that are not defined, the court considers the ordinary and common meaning of such words or phrases to ar-

rive at a proper construction. *See True Heart Corp. v. River City Auto Sales, Inc.*, 32 Kan.App.2d 237, 82 P.3d 519, 525 (2003, no writ); *Thompson v. Founders Group Int'l Inc.*, 20 Kan.App.2d 261, 886 P.2d 904, 910 (1994, no writ). The word "incur" or "incurred" is not defined in the Trust document. Accordingly, the court ascribes the ordinary and common meaning to the word "incur" as it interprets and applies the word to the Trust. The word "incur" means "to become liable or subject to: bring down upon oneself." *See* Webster's Collegiate Dictionary 632 (11th ed.2004).[4] This common understanding of "incur" is supported by Black's Law Dictionary which defines "incur" as "to suffer or bring on oneself (a liability or expense)." Black's Law Dictionary 782 (8th ed.2004). Based on these definitions, the common and ordinary meaning of the word "incur" does not restrict its meaning *only* to those expenses which have been paid by the person incurring them. Once services are provided, a person necessarily incurs such expenses because he or she is obligated to pay for such services, unless they are provided at no charge.[5] Whether one is reimbursed for the expenses, or whether the expenses are paid from a collateral or independent source, is of no moment.

Essentially, Wells Fargo's position is that if the expenses have been paid by a collateral or independent source, such act wipes the slate clean as if the legal fees and expenses were never incurred. Wells Fargo, however, cannot "unring the bell"

---

(a) Except as provided in subsection (b), all partners are liable jointly and severally for everything chargeable to the partnership, but any partner may enter into a separate obligation to perform a partnership contract.

K.S.A. § 56–315 (repealed 1999).

**4.** This definition is identical to the definition contained in an earlier version of the same dictionary. "Incur" means "to become liable

or subject to: bring down upon oneself." Webster's Ninth New Collegiate Dictionary 611 (9th ed.1985).

**5.** There is absolutely no evidence in the record that the services in question were provided free of charge. Had the services been provided free of charge, the court would agree that no expenses were "incurred."

once it has been rung. Defendants having incurred expenses, Wells Fargo cannot now say that they were not incurred merely because of payment by some source other than Sorensen. Given the plain, unequivocal language of the Trust, and the common and ordinary meaning of the word "incur," the court determines that there is no genuine issue of material fact that Sorensen incurred the expenses and is entitled to reimbursement for all reasonable costs and expenses, including attorney's fees, incurred in defending the action in the *Marshall* case.

### 3. Collateral Source Rule

■ Defendants contend that the collateral source rule precludes Wells Fargo from reducing the amount that Sorensen is to be reimbursed from the Trust for the costs and expenses of the *Marshall* Case. The court agrees. The common law collateral source rule provides that "benefits received by the plaintiff from a source wholly independent of and collateral to the wrongdoer will not diminish the damages otherwise recoverable from the wrongdoer." *Rose v. Via Christi Health Sys., Inc.*, 276 Kan. 539, 78 P.3d 798, 802 (2003) (citations and internal quotation marks omitted).

> The purpose for the collateral source rule is to prevent the tortfeasor from escaping from the full liability resulting from his or her actions by requiring the tortfeasor to compensate the injured party for all of the harm he or she causes, not just the injured party's net loss. A benefit secured by the injured party either through insurance contracts, advantageous employment ar-

rangements, or gratuity from family or friends should not benefit the tortfeasor by reducing his or her liability for damages. If there is to be a windfall, it should benefit the injured party rather than the tortfeasor (citations omitted).

*Id.* Traditionally, the collateral source rule is applied in tort cases. Kansas courts, however, have also applied the rule to breach of contract cases. *See Masterson v. Boliden–Allis, Inc.*, 19 Kan.App.2d 23, 865 P.2d 1031, 1035 (1993, no pet.) (citing *Pape v. Kansas Power & Light Co.*, 231 Kan. 441, 647 P.2d 320 (1982)). Defendants thus argue that "the collateral source rule provides no refuge for [Wells Fargo] to avoid the obligations of the Trust. In fact, not only is the Court prohibited from considering any collateral source in interpreting the Trust, such evidence is not admissible at trial." Defs.'s Brief at 18.

Wells Fargo, on the other hand, contends that Defendants' claim is for breach of contract, and the collateral source rule arises out of tort law. Pl.'s Response at 21. Wells Fargo argues that the holding in *Masterson* is problematic because it relies on two earlier Kansas cases whose holdings were not based on the collateral source rule.[6] *Id.* at 21–22, 865 P.2d 1031. Wells Fargo further contends that the collateral source rule does not apply to this case because it is not the wrongdoer whose misconduct caused the loss. Pl.'s Response at 23. Although Wells Fargo maintains that the *Masterson* court misapplied Kansas law, the holding from that court that the collateral source rule can be applied to breach of contract cases is the still

---

6. The court in *Masterson* relied on *Mahoney, Inc. v. Galokee Corp.*, 214 Kan. 754, 522 P.2d 428 (1974) (court refused to reduce the amount of damages by the amount an owner had received from insurance proceeds); and *Broce–O'Dell Concrete Prods., Inc. v. Mel Jar-*

*vis Constr. Co.*, 6 Kan.App.2d 757, 634 P.2d 1142 (1981) (concrete company not entitled to credit for the portion of damages paid to a construction company by a general contractor).

the governing law. This court will therefore apply the collateral source rule to this case.

■ The purpose of the collateral source rule is to prevent the reduction of damages recoverable from a wrongdoer, when the plaintiff has received benefits from a wholly different source. *See Cessna Aircraft Co. v. Metropolitan Topeka Airport Auth.*, 23 Kan.App.2d 1038, 940 P.2d 84, 99 (1997). The court agrees that Wells Fargo, as trustee of the Trust, is not the wrongdoer or person at fault. Marshall III, however, the beneficiary of the Trust, does stand directly in the shoes of the wrongdoer because he was the one who instituted litigation regarding the Trust and caused Sorensen to incur costs and expenses to successfully defend the litigation in the *Marshall* Case. As Defendants correctly point out, Marshall III will benefit if Sorensen is not reimbursed. Accordingly, the court determines that the collateral source rule applies to this case, and will not act as a bar to Sorensen's recovery of reasonable costs and expenses with respect to the *Marshall* case.

### B. Wells Fargo's Motion for Summary Judgment

#### 1. Foulston Siefkin's Rights Under the Trust Instrument

■ Wells Fargo contends that Foulston Siefkin has no rights under the Trust because it was never a Trustee. The court agrees. Foulston Siefkin alleges that its claim is derived through Sorensen, and that it has an equitable or legal right of subrogation for the fees and expenses. Defs.'s Response at 14. Foulston Siefkin, however, was also a party in the *Marshall* Case, and was jointly and severally liable to pay the fees and expenses associated with the litigation, which it did. Thus, Foulston Siefkin, is not entitled to equitable or legal subrogation because it was

discharging its own debt. Pursuant to Kansas law, subrogation is a remedy in which "one person, not a mere volunteer, pays a debt for which another is primarily liable and which in equity and good conscience should have been discharged by the latter." *United States Fidelity & Guar. Co. v. Maryland Cas. Co.*, 186 Kan. 637, 352 P.2d 70, 76 (1960). Since the debt was also Foulston Siefkin's it is not entitled to subrogation and has no right to reimbursement from the Trust. Accordingly, no genuine issue of material fact exists as to Foulston Siefkin's rights under the Trust, and Wells Fargo is entitled to judgment as a matter of law as to Foulston Siefkin's claim.

#### 2. Sorensen's Rights Under the Trust Instrument

Wells Fargo contends that Sorensen did not pay any fees for legal services, has been fully reimbursed for his out-of-pocket expenses, and, therefore, there is nothing for which he should be reimbursed from the Trust. For the reasons stated in section III A(2), *supra*, in the court's analysis of Sorensen's claim of reimbursement for fees and costs incurred, the court determines that there is no genuine issue of material fact that Sorensen has incurred costs and expenses as prescribed by the terms of the Trust. Accordingly, Wells Fargo's is not entitled to summary judgment on this issue.

#### 3. Statute of Limitations as to the Counterclaim

Defendants counterclaimed against Wells Fargo for breach of contract or violation of Trust because it refuses to reimburse them for fees and expenses they incurred in the *Marshall* Case. Defendants allege that Wells Fargo is liable in its individual capacity for the amount of the reimbursement claim that the Trust is un-

able to satisfy because Wells Fargo has distributed the majority of the Trust income to Marshall III, who has filed for bankruptcy. Wells Fargo asserts that Defendants' counterclaim is barred by the Texas four-year statute of limitations for actions for debt.[7]

■■■ Because of the following analysis by the court, any dispute regarding the applicable statute of limitations becomes moot. "Questions of substantive law are controlled by the laws of the state where the cause of action arose, but matters of remedy and procedure are governed by the laws of the state where the action is sought to be maintained." *Rush v. Barrios,* 56 S.W.3d 88, 97 (Tex.App.—Houston [14th Dist.] 2001, *reh'g denied* ) (citing *Hill v. Perel,* 923 S.W.2d 636, 639 (Tex.App.—Houston [1st Dist.] 1996, no writ)). Statutes of limitations are procedural issues. *Hill,* 923 S.W.2d at 639. Since Texas is the state where the action is maintained, Texas procedural law is applicable. Texas has a four-year statute of limitations for actions for debt and actions for which there is no express limitation period. Tex. Civ. Prac. & Rem.Code Ann. §§ 16.004(a)(3), 16.051 (Vernon 2002).

■■■ The court now determines when the cause of action for reimbursement accrued. Wells Fargo contends that all claims asserted in the *Marshall* Case against Sorensen and Foulston Siefkin related to the Trust were dismissed by the Houston probate court on June 7, 1999, Pl.'s App. at 4, and this is when the action accrued. Wells Fargo maintains that since Defendants filed their counterclaim on July 31, 2003, over four years after the cause of action accrued, the counterclaims

are barred by the applicable four-year statute of limitations.

Defendants raise several arguments against Wells Fargo's contention that their counterclaim is barred by the statute of limitations. First, Defendants contend that the limitations did not begin to run on June 7, 1999, because the motion for summary judgment, which the trial court granted, in part, in favor of them in the *Marshall* Case, was interlocutory and subject to change or being set aside before the entry of a final judgment; that even after the partial granting of the summary judgment, Marshall III continued to assert until the time of trial his claims against Sorensen for breach of fiduciary duty arising from his position as trustee of the Trust; and that Marshall III's claim against Sorensen did not terminate until the probate court granted their motion for directed verdict on or about January 17, 2001. They maintain, therefore, that the statute of limitations for the counterclaim did not commence until that date. The court agrees.

■■■ Summary judgment granted as to separate issues within a single cause of action is partial and interlocutory until all issues are either adjudicated or ordered severed by the trial court. *Chase Manhattan Bank, N.A. v. Lindsay,* 787 S.W.2d 51, 53 (Tex.1990). Defendants' motion to have the claims severed in the *Marshall* Case after the court granted the partial summary judgment was denied. Defs.'s App. at 314–319. Because the summary judgment order was interlocutory and not appealable, it was subject to change or being set aside. *See* Tex. Civ. Prac. & Rem.Code § 51.014 (Vernon 1997). Thus, the court concludes that Sorensen's cause

---

7. Defendants make an oblique reference that the statute of limitations in Kansas for an action upon any agreement, contract, or promise in writing is five years. *See* K.S.A. § 60–511 (2003). Defendants note, therefore, that under Kansas law the counterclaim would not be barred. Defs.'s Response at 38.

of action for reimbursement did not accrue on June 7, 1999, when the summary judgment order was signed; but rather on January 17, 2001, when the probate court entered a directed verdict for Sorensen and Foulston Siefkin as to Marshall III's claims against them.

Second, even if one could arguably conclude that the cause of action accrued on June 7, 1999, when the summary judgment order was filed, an alternative basis exists for determining that the counterclaim is not barred by the applicable statute of limitations. Defendants argue that because this action was stayed by the court on July 31, 2002, pending a decision by the federal district court in a lawsuit filed earlier in Kansas, the statute of limitations was tolled. They maintain that the statute of limitations did not begin to run until the court's order of July 7, 2003, granted their motion to lift the stay after the Kansas case was dismissed. Wells Fargo argues, conversely, that the stay did not prevent Defendants from pursuing another action against Wells Fargo, and that Defendants could have timely filed their claims in another court. The court disagrees with Wells Fargo's argument. Generally, "[W]here a person is prevented from exercising his legal remedy by the pendency of legal proceedings, the time during which he is thus prevented should not be counted against him in determining whether limitations have barred his rights." *Holmes v. Texas A & M Univ.*, 145 F.3d 681, 684 (5th Cir.1998) (citing *Jackson v. Johnson*, 950 F.2d 263, 265 (5th Cir.1992)). Wells Fargo sets forth no legal reason why this rule should not apply to the circumstances of this case. Therefore,

the statute of limitations was tolled until after the stay was lifted, and Defendants timely filed their counterclaim on July 31, 2003.[8] Accordingly, there is no genuine issue of material fact that the counterclaim was timely filed, and Wells Fargo is not entitled to summary judgment on this issue.

### 4. Collateral Source Rule

Wells Fargo contends that, unless the collateral source rule is applied, Defendants' recovery cannot be greater than $250,000, which is the amount not paid by Defendants' liability insurer. Wells Fargo maintains that application of the collateral source rule would be error as a matter of law. The court disagrees. For the reasons stated in section III A(3), *supra*, in the court's analyses of Defendants' entitlement to reimbursement and the application of the collateral source rule, there is no genuine issue of material fact that the rule applies to this action. Accordingly, Wells Fargo is not entitled to summary judgment as to this issue.

### C. Objections of Defendants and Counter–Plaintiffs Harvey R. Sorensen and Foulston Siefkin LLP to Plaintiff's Supplemental Appendix

Defendants filed objections to Wells Fargo's supplemental appendix, contending that Wells Fargo violated Local Rule 56.7 by filing the supplemental appendix without leave of the court; and that certain portions of the supplemental appendix were inadmissible. As Wells Fargo did not seek permission pursuant to Local Rule

---

**8.** Defendants also contend that their counterclaim is not time-barred because of the Relation Back Doctrine, Tex. Civ. Prac. & Rem. Code § 16.069 (Vernon 2002), which allows the filing of a counterclaim, that would otherwise be barred by limitations, if it arises out of the same transaction or occurrence that is the basis of an action. The court need not address this contention, since it has concluded that the statute of limitations does not bar Defendants' counterclaim.

56.7 for leave of the court, the court declines to consider any information contained in the supplemental appendix. In any event, even if the court had considered the supplemental appendix, it would have reached the same result regarding Wells Fargo's motion for summary judgment. The court therefore **overrules as moot** Objections of Defendants and Counter–Plaintiffs Harvey R. Sorensen and Foulston Siefkin LLP to Plaintiff's Supplemental Appendix.

## IV. *Conclusion*

For the reasons herein stated, no genuine issues of material fact exist with respect to whether Defendant Harvey R. Sorensen is entitled to reimbursement from the Trust. Accordingly, the court **grants** the Motion of Defendants and Counter–Plaintiffs Harvey R. Sorensen and Foulston Siefkin LLP for Partial Summary Judgment, and **declares** that Defendant Harvey Sorensen is entitled to reimbursement from the Trust for reasonable costs and expenses, including attorney's fees, incurred in defending the action in the *Marshall* case.

For the reasons herein stated, no genuine issues of material fact exist whether Defendant Foulston Siefkin is entitled to reimbursement from the Trust, and the court **declares** that Foulston Siefkin is not entitled to reimbursement from the Trust. Accordingly, the court **grants in part** and **denies in part** Plaintiff's Motion for Summary Judgment. The matters that remain for trial are the amount of damages (reasonable attorney's fees and expenses incurred in the *Marshall* Case) and Defendants' counterclaim for breach of contract or violation of Trust and negligence/breach of Trust of current trustee. The court, however, in light of the its ruling, questions the viability of the counterclaim for breach of contract or violation of Trust.

This and other related matters with the parties will be discussed in a conference call. **The court will hold a telephonic conference with counsel at 3:30 p.m., Monday, December 20, 2004.** The court **vacates** the pretrial deadlines in its Scheduling Order of August 19, 2004, and will issue a new Scheduling Order once it has conferred with the parties. The parties are put on notice that the court would like to try this case in January 2005, as it will be three years old at that time.